**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | **Case No. 2:19-cv-03634** |
| **Plaintiff,** | : | |
| | : | **JUDGE ALGENON L. MARBLEY** |
| **v.** | : | |
| | : | **Magistrate Judge Jolson** |
| **RONALD E. SCHERER, et al.,** | : | |
| | : | |
| | : | |
| **Defendants.** | : | |

## OPINION & ORDER

### I. INTRODUCTION

This matter is before the Court on three Motions: (1) the Government's Motion for Summary Judgment; (2) Defendant Ronald E. Scherer's Motion for Summary Judgment; and (3) Defendant Douglas Q. Holmes' Motion for Summary Judgment. Docs. 74, 51, 63. The Motions are fully briefed, and the Court will resolve each of them without oral argument. For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** the Government's Motion for Summary Judgment [#74]; **DENIES** Defendant Scherer's Motion for Summary Judgment [#51]; and **DENIES** Defendant Holmes' Motion for Summary Judgment [#63].

### II. BACKGROUND

Under 26 U.S.C. § 6321, if any person liable to pay any tax neglects or refuses to pay that tax after a demand, the amount owed becomes a lien in favor of the United States Government upon all property and rights to property, whether real or personal, belonging to such person. On December 16, 2005, the United States Government made assessments of federal income taxes against Defendant Ronald E. Scherer for unpaid amounts during tax years 1990, 1991, and 1992.

1

Doc. 76 at 10. At the time, Defendant Scherer owned 100 percent of the stock of Maples Health Care, Inc. ("Maples, Inc.") and West Virginia Health Care, Inc. ("WVHI"). *Id.* at 10-11. Consequently, federal liens in favor of the Government attached to Defendant Scherer's property, including those stocks, by operation of § 6321.

On May 15, 2014, the Government initiated a civil action against Defendant Scherer in this Court, seeking to enforce federal tax liens on two properties. *See United States v. Scherer, et al.*, 14-cv-00452. On September 5, 2014, during the pendency of this lawsuit, Defendant Scherer signed an agreement ("Release and Settlement Agreement") that gave his family trust, the Roger L. Scherer Trust ("Trust"), of which Defendant Douglas Q. Holmes is the Trustee, the option to acquire Defendant Scherer's stock in WVHI. Doc. 12 at 12. In exchange, the Trust was supposed to, among other things, intervene in the 2014 civil suit, pay for Defendant Scherer's litigation expenses, and treat a prior $6.2 million probate court judgment against Defendant Scherer as satisfied. *Id.* at 12. The Trust exercised its option to acquire the WVHI stock on December 31, 2015. *Id.*

On July 26, 2017, this Court entered judgment in favor of the Government and against Defendant Scherer in the 2014 civil action. *United States v. Scherer*, 14-cv-00452, Doc. 193. In its Opinion and Order Granting the Government's Motion for Summary Judgment, the Court concluded as follows:

> Judgment is granted in favor of the Plaintiff United States of America and against Defendant Ronald E. Scherer for his liability for federal income taxes for 1990, 1991, and 1992 in the amount of $5,429,482.54, plus statutory accruals as allowed by law from June 30, 2017, until fully paid.

*Id.* Today, Defendant Scherer has an outstanding balance of $5,598,628.33. Doc. 1 at 5. Hence, the Government seeks to enforce its federal tax liens on Defendant Scherer's stock in Maples, Inc. and WVHI, and to appoint a receiver to sell the two corporations. *Id.* at 1.

## III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that a court may grant summary judgment if "the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  No dispute of material fact exists where the record "taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In resolving cross-motions for summary judgment, "the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *B.F. Goodrich Co. v. United States Filter Corp.*, 245 F.3d 587, 592 (6th Cir. 2001) (quoting *Taft Broadcasting Co. v. United States*, 929 F.2d 240, 241 (6th Cir. 1991)). Ultimately, the court must evaluate "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52.

## IV. ANALYSIS

The Government, Defendant Scherer, and Defendant Holmes have all filed Motions for Summary Judgment in this case.  The Court will address Defendants' Motions first.  Following this, the Court will address the Government's Motion.

### A.  Defendants Scherer and Holmes' Motions for Summary Judgment

In their Motions for Summary Judgment, Defendants Scherer and Holmes, both proceeding *pro se*, appear to argue that Defendant Scherer does not owe any taxes and that the Government's prior judgment against him was not properly obtained.  To the extent this is the basis for Defendant Holmes' Motion, he lacks standing to contest the tax assessments of another person.  *See In re Campbell*, 761 F. 2d 1181, 1185 (6th Cir. 1985) ("[A] third party is not entitled to question the tax

3

liability of another, especially when the IRS is involved in collecting the taxes.").[1]  Moreover, Defendants' arguments are barred by collateral estoppel.

Under the doctrine of collateral estoppel, "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Hammer v. I.N.S.*, 195 F.3d 836, 840 (6th Cir. 1999).  "The doctrine reflects the longstanding policy that one full opportunity to litigate an issue is sufficient." *Id.*  Under the law of the Sixth Circuit, collateral estoppel applies when: (1) the issue in the subsequent litigation is identical to that resolved in the earlier litigation; (2) the issue was actually litigated and decided in the prior action; (3) the resolution of the issue was necessary and essential to a judgment on the merits in the prior litigation; (4) the party to be estopped was a party to the prior litigation (or in privity with such a party); and (5) the party to be estopped had a full and fair opportunity to litigate the issue. *Id.*  All five factors are satisfied here.

First, as in this case, the Government brought a suit in 2014 to enforce federal tax liens against Defendant Scherer for unpaid taxes during the years 1990, 1991, and 1992.  Second, the issue of whether Defendant Scherer was liable for these unpaid taxes was previously litigated and decided on summary judgment.  Third, this issue was the central focus of the prior action and its resolution was necessary to enter a final judgment.  Fourth, Defendant Scherer was a party to the earlier action.  Finally, despite choosing not to file a response to the Government's Motion for Summary Judgment in the 2014 suit, Defendant Scherer had a full and fair *opportunity* to litigate

---

[1] Alternatively, it appears that Defendant Holmes is asking the Court to dismiss its Preliminary Injunction Order.  Defendant Holmes, however, along with the other parties to the case, stipulated to the terms of that Order.  *See* Doc. 45.  The Court finds no basis to release Defendant Holmes from his signed agreement.

the issue. *See Shields v. Reader's Digest Ass'n*, 173 F. Supp. 2d 701, 707 (E.D. Mich. 2001) ("Determining whether a party has had a 'full and fair' opportunity to litigate an issue is necessarily a discretionary exercise.").

In short, Defendants are estopped from relitigating whether Defendant Scherer owes back taxes for the years 1990, 1991, and 1992. Accordingly, Defendants Scherer and Holmes' Motions for Summary Judgment [#51, #63] are **DENIED**.

### B. Government's Motion for Summary Judgment

The Government moves for summary judgment against Defendants Scherer and Holmes, asking the Court to rule that the federal tax liens against Defendant Scherer attach to the stock of both Maples, Inc. and WVHI.

#### 1. Whether the Federal Tax Liens Attach to the Maples, Inc. Stock

The Government seeks an order finding that the federal liens against Defendant Scherer attach to his stock ownership in Maples, Inc. The Government maintains that Defendant Scherer currently owns this stock, and thus, the liens automatically attach pursuant to § 6321. In his response, Defendant Scherer does not deny owning the Maples, Inc. stock; rather, he challenges the validity of the Government's tax assessments. Because Defendant Scherer is estopped from raising this argument, and because he does not deny owning the Maples, Inc. stock, the Court finds that the Government's federal tax liens against Defendant Scherer for tax years 1990, 1991, and 1992 attach to the Maples, Inc. stock.

#### 2. Whether the Federal Tax Liens Attach to the WVHI Stock

The Government also seeks an order finding that the federal liens against Defendant Scherer attach to the stock of WVHI. While Defendant Scherer transferred ownership of the WVHI stock to the Trust on December 31, 2015, the Government maintains that the liens against

Defendant Scherer follow the transfer of the stock for three reasons: (1) the stock transfer was ineffective under state law; (2) the Trust was not a valid "purchaser" under 26 U.S.C. § 6323; and (3) the stock transfer was fraudulent under 28 U.S.C. § 3304. The Court will address each of the Government's arguments, in turn, below.

### a. Ineffective Transfer

First, the Government argues that the transfer of the WVHI stock from Defendant Scherer to the Trust was ineffective under Ohio state law. Namely, the Government contends that Defendant Scherer failed to endorse and deliver the WVHI stock to the Trust.

Ohio Revised Code § 1308.18(A)(1) provides that a person acquires a security interest if "[t]he person is a purchaser to whom a security is delivered pursuant to section 1308.27 of the Revised Code." Section 1308.27(A)(1), in turn, instructs that delivery of a certified security to a purchaser occurs when "[t]he purchaser acquires possession of the security certificate."

Here, the Government asserts that Defendant Scherer never endorsed and delivered the WVHI stock certificate to the Trust; rather, the certificate remains in the possession of Summit Bank. The Government thus argues that the stock transfer was ineffective under state law and remains subject to the federal tax liens against Defendant Scherer.

Although, as between a buyer and seller of certificated securities, "delivery of a signed stock certificate is generally required to effect a legal change of ownership, there may still be a beneficial, or equitable, change of ownership prior to the delivery of the certified security, where the buyer and seller are contractually bound." *Smith v. Koehler*, 91 Ohio App. 3d 337, 340 (Ohio Ct. App. 1992). Here, Defendant Scherer and the Trust entered into a contract on December 31, 2015, whereby ownership of the WVHI stock was transferred to the Trust. *See* Doc. 37-24. The terms of that agreement were clear, identifying the parties, the date of the transfer, and the specific

6

stock at issue. *See id.* Under these circumstances, a reasonable juror viewing the facts in a light most favorable to the non-moving party could conclude that the transfer of the WVHI stock from Defendant Scherer to the Trust was valid under equitable principles. *See Smith*, 91 Ohio App. 3d at 340.

Alternatively, the Government argues that the transfer should be deemed ineffective because Defendant Scherer's agreement with Summit Bank provided that he could not transfer the WVHI stock without written permission from the Bank. The Government's argument fails, however, because it has no standing to enforce Summit Bank's rights under that agreement. The Government implicitly acknowledges this fact in its reply brief. *See* Doc. 93 at 13.[2]

### b. Invalid Purchaser

Next, the Government argues that the federal tax liens against Defendant Scherer followed the transfer of the WVHI stock to the Trust because the Trust was not a valid purchaser of the stock under 26 U.S.C. § 6323.

Section 6323(b)(1)(A) provides that where a notice of a lien has been filed, the lien is not valid "as against a purchaser of [a] security who at the time of purchase did not have actual notice or knowledge of the existence of such lien." 26 U.S.C. § 6323(b)(1)(A). A purchaser under this

---

[2] **United States Does Not Attempt to Assert Rights Under Pledge the Agreement (sic)**

Holmes argues that the government wrongly treats itself as a party to, and a beneficiary of, the agreement by which Scherer pledged his stock in WVHI to Summit Community Bank. He argues that the government is trying to enforce the bank's rights under the pledge agreement. He argues that the government alleges that, after Scherer pledged his stock in WVHI, the bank owned the shares, and, as a result, Scherer could not transfer them. Holmes misconstrues the government's arguments and disregards the facts on which they are based.

The government relies on the undisputed facts that Scherer did not indorse or deliver the certificate of WVHI stock to the Trust to argue his attempted transfer of it was ineffective.

section is defined as a person who, "for adequate and full consideration in money or money's worth, acquires an interest (other than a lien or security interest) in property which is valid under local law against subsequent purchasers without actual notice."  26 U.S.C. § 6323(h)(6). [3]

Here, the Government asserts that the Trust was not a valid purchaser of the WVHI stock because it did not provide adequate and full consideration in exchange for the stock.  The Government maintains that on December 31, 2015 -- the date of transfer -- the value of the WVHI stock was $1,819,572.  It follows, the Government argues, that to qualify as a valid purchaser of WVHI stock, and to be entitled to the protections of § 6323(b)(1)(A), the Trust must have given Defendant Scherer consideration with a value relatively close to this amount.  *See WSB Walnut & Assocs., LLC v. United States*, 2006 WL 1348520, at *7 (N.D. Cal. May 17, 2006) (finding "adequate and full consideration in money or money's worth" under § 6323(h)(6) requires "that the consideration and property value in this equation . . . be relatively close").  According to the Government, however, the value of the consideration that the Trust gave in return for the WVHI stock was merely $421,959.13 ($358,516.35 in litigation expenses and $63,442.78 in consultant fees).  Notably, the Government disregards the Trust's forgiveness of the $6.2 million probate

---

[3] In its opening brief, the Government did not challenge whether Defendant Holmes, as trustee of the Trust, had notice or knowledge of Defendant Scherer's tax liens, the absence of which is required under 26 U.S.C. §§ 6323(b)(1)(A) and (h)(6).  As such, Defendant Holmes did not address this element of the statute in his response brief.  To the extent the Government now, in its reply brief, argues that Defendant Holmes had notice or knowledge of the liens, such that the protections of §§ 6323(b)(1)(A) and (h)(6), or the state equivalent under O.R.C. § 1308.17, do not apply, the Court considers this argument waived for purposes of the Government's Motion for Summary Judgment.  *See Scottsdale Ins. Co. v. Flowers*, 513 F. 3d 546, 553 (6th Cir. 2008) ("Raising the issue for the first time in a reply brief does not suffice; reply briefs *reply* to arguments made in the response brief—they do not provide the moving party with a new opportunity to present yet another issue for the court's consideration.  Further the non-moving party ordinarily has no right to respond to the reply brief, at least not until oral argument.  As a matter of litigation fairness and procedure, then, we must treat [such issues] as waived.").

judgment against Defendant Scherer, asserting this cannot constitute consideration.  The Court will expand on this last argument in the sections that follow.

Defendant Holmes refutes the Government's valuation of the WVHI stock.  Relying on the affidavit of Defendant Scherer, Defendant Holmes concludes that the value of the stock, as of December 31, 2015, was only $200,000.  Doc. 89 at 19.  Additionally, Defendant Holmes argues that the Government overlooks the Trust's *ongoing* obligation to pay Defendant Scherer's expenses in connection with *all* litigation involving his tax disputes.  (Emphasis added).  Defendant Holmes places a value on this obligation of at least $500,000 above what the Government represents.  Finally, Defendant Holmes maintains that the Trust's forgiveness of Defendant Scherer's $6.2 million probate judgment can constitute consideration for the WVHI stock. The Court will address each of these three issues, in turn, below.

i.    <u>Value of WVHI Stock</u>

As a threshold matter, the Government and Defendant Holmes disagree about the value of the WVHI stock as of December 31, 2015.  The Government values the WVHI stock at $1,819,572. The Government's figure stems from a 57-page appraisal report that the Southwestern Appraisal Company completed on January 22, 2016.  *See* Doc. 75-5.  The report concluded that the value of "The Maples" -- the facility owned by WVHI -- was $4,123,400.  *See id.* at 1.  At the time, WVHI had loan balance of $2,303,827.72 with Summit Bank.  *See* Doc. 75-13.  When you subtract the loan balance from the appraisal price, you get the Government's valuation of $1,819,572. Defendant Scherer used this same valuation figure in his brief opposing the Government's Motion for a Preliminary Injunction.  *See* Doc. 27 at 7 ("**THERE IS NO RISK OF DISSAPATING ASSETS** as the value of WVHI has grown each year by state appraisal under its current corporate

governance, policies as follows: 2016 -- $4,123,400; 2017 -- $4,165,400; 2018 -- $4,267,500; 2019 -- $4,383,000.").

In stark contrast to the Government, Defendant Holmes' values the WVHI stock at $200,000. This figure comes from Defendant Scherer's affidavit, where he gives an estimate of WVHI's value based on his personal knowledge as CEO of Maples, Inc. *See* Doc. 89-1.[4] Other than stating that he "often speak[s] with brokers who are involved with making a market in nursing homes," Defendant Scherer's affidavit does not explain how he arrived at his estimation. *See id.* ("In 2014 and 2015, The Maples was not very profitable. Based on that profitability, the debt owed by MHCI and WVHI, and my knowledge of the market for nursing and extended facilities, I estimate that The Maples was worth less than $1,000,000 at December 31, 2015, of which 80% I would attribute to MHCI, as operator and owner of the business, and 20% to WVHI, as owner of the building."). Nevertheless, Defendant Holmes argues that this is the only admissible evidence in the record of WVHI's value because the Government's appraisal report was designed not to measure the true value of The Maples, but rather to determine the appropriate level of reimbursement under West Virginia Medicaid and Medicare.[5] The Court disagrees.

Despite the Government and Defendant Holmes offering conflicting evidence of WVHI's value, the estimation in Defendant Scherer's affidavit does not create a material question of fact. Critically, Defendant Scherer, himself, relied on the same appraisal report that the Government now offers when he represented to the Court that the value of WVHI was $4,123,400 in 2016, and increasing each year. *See* Doc. 27 at 7. Defendant Scherer's affidavit is thus wholly inconsistent

---

[4] Maples, Inc. manages The Maples, which is the facility owned by WVHI. *See* Doc. 89-1.

[5] The Court finds no basis for this distinction. The Southwest Appraisal Company's report states that the "value of the subject facility" is $4,123,4000, without any qualifying references. *See* Doc. 75-5 at 1.

with his earlier pleading. *See Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986) ("A party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts her earlier deposition testimony."). Moreover, Defendant Scherer offered no factual basis for the statements in his affidavit. He did not, for example, identify any specific information that a broker shared with him about the value of WVHI, attach financial or broker information, or explain which assets of WVVHI he considered for his valuation. Rather, Defendant Scherer's affidavit is a self-serving document unsupported by any facts or data. *See Wolfe v. Vill. of Brice, Ohio*, 37 F. Supp. 2d 1021, 1026 (S.D. Ohio 1999) (Marbley, J.) ("Self-serving affidavits, alone, are not enough to create an issue of fact sufficient to survive summary judgment.") (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986); *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995)). The Government's appraisal report, on the other hand, details in depth how the Southwestern Appraisal Company arrived at its valuation of The Maples. *See* Doc. 75-5.[6]

Additionally, Defendant Holmes' reliance on Federal Rule of Evidence 701 -- for the proposition that the owner of a business can speak to the value of their business without being qualified as an accountant, appraiser, or similar expert -- is misplaced. *See* Fed. R. Evid. 701, Committee Notes to 2000 Amendments ("For example, most courts have permitted the owner or officer of a business to testify to the value or projected profits of the business, without the necessity of qualifying the witness as an accountant, appraiser, or similar expert."). The Court is not questioning Defendant Scherer's ability to attest to the value of WVHI; rather, the Court is

---

[6] Defendant Holmes argues that the Government improperly attributes the valuation of The Maples entirely to WVHI, as opposed to attributing some of this value to Maple, Inc. But again, the Government's valuation is consistent with what Defendant Scherer previously represented to be the full value of WVHI. *See* Doc. 27 at 7.

questioning the validity of his estimation given that he provided no factual basis to support his valuation and his valuation contradicts his earlier pleading.

In short, the Court finds the Government's appraisal report to be credible, reliable evidence of WVHI's value as of December 31, 2015. As such, even viewing the evidence in a light most favorable to the non-moving party, a reasonable juror could conclude that the value of the WVHI stock on that date was $1,819,572.

ii.    Value of Trust's Promise to Pay Litigation Expenses

Next, the Government and Defendant Holmes disagree about the value of the Trust's obligation to pay Defendant Scherer's litigation expenses in connection with his tax cases. The Government claims that, as of December 31, 2015, the Trust had paid a total of $421,959.13 -- $358,516.35 in litigation expenses and $63,442.78 in consultant fees. The Government maintains that this ended the Trust's obligation under the Release and Settlement Agreement. Defendant Holmes, on the other hand, asserts that the Trust's obligation to pay Defendant Scherer's litigation expenses was ongoing for all pending and future cases. Because, as of December 31, 2015, the Trust could not have completed its obligation to pay Defendant Scherer's litigation expenses, Defendant Holmes argues that the value of the Trust's obligation is worth at least an additional $500,000 and counting. The crux of the disagreement, therefore, lies in the parties' differing interpretations of the Release and Settlement Agreement.

Under Ohio law, if the terms of a contract are clear and unambiguous, the Court "presumes that the parties' intent resides in the words of the agreement." *Gen Corp., Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 817 (6th Cir. 1999). "An ambiguity exists only where a term cannot be determined from the four corners of the agreement or where contract language is susceptible to two or more reasonable interpretations." *Id.* at 818. Whether a contract is ambiguous is a question

of law for the Court to resolve.  *Id.*  But "[i]f the [C]ourt determines that a contract term is ambiguous, a question of fact for the jury arises."  *Id.*

> Here, the Release and Settlement Agreement reads, in relevant part, as follows:
>
> 1. Terms of Settlement.  Subject to the conditions hereinafter set forth, and in exchange for 1.) The assignment of all proceeds received after deduction for beneficiary time and costs incurred from the judgment related malpractice case against attorney Jim Wiles law firm, 2.) The assignment of all proceeds received after deduction for beneficiary time and costs incurred from the judgment related malpractice case rights against Attorney Elliot Good and the Good law firm and 3.) the intervention by the Trust(s) into the beneficiary tax case and counter suit against the Federal Government 4.) the assignment of all proceeds received after deduction for beneficiary time and costs incurred from the outcome of the case to the Trust(s) *(5.) the agreement of the Trust(s) to fund/pay all incurred litigation fees and costs of all litigation* (6.) the execution of an option agreement to purchase all (100%) of the stock of West Virginia Health Care Inc. (WVHC) an Ohio Corporation from the Beneficiary (7) the agreement of the Trust(s) to timely finance and close on the stock of WVHC as stated under the terms and conditions in the option agreement (Exhibit B) attached hereto (the "Settlement Payment") have been met.

Doc. 37-23 at 1 (emphasis added).  On its face, the highlighted portion of the text could reasonably be read one of two ways: (1) a promise to pay the litigation fees and costs for all cases denoted in the paragraph, as the Government contends; or (2) a promise to pay the litigation fees and costs for all pending and future tax-related cases, as Defendant Holmes claims.  The former interpretation is supported by the fact that the highlighted text is positioned within a paragraph identifying specific cases to which Defendant Scherer is involved.  Contextually, it would make sense that the Trust be obligated to bear the costs of those cases.  At the same time, the latter interpretation finds support in the fact that the highlighted text does not specifically limit its reach to the cases noted within the Agreement.  Instead, the text states that the Trust is obligated to pay litigation fees and costs of "all" litigation.  Because the Court finds the Release and Settlement Agreement ambiguous in this respect, determining whether the Trust has an ongoing duty to pay for Defendant Scherer's litigation expenses in pending and future cases is a question of fact for a

jury to decide. If a jury were to find the Trust's obligation to be ongoing, this accruing expense, standing alone, might constitute full and adequate consideration for the WVHI stock.

### iii.  Value of Probate Judgment

The Government and Defendant Holmes' final disagreement surrounds whether the Trust's forgiveness of Defendant Scherer's $6.2 million probate judgment can constitute partial or full consideration for the WVHI stock. Before answering that question, a bit of background is necessary.

Defendant Scherer, along with his son, Ronald E. Scherer, Jr., his daughters, Amie S. Swaddling and Patricia S. Johnson, his sister, Linda S. Talbott, and his niece, Tracy Immel, are all beneficiaries to the Trust. Doc. 37-21 at 1. In 2004, each of these individuals were named as defendants in a probate action in Franklin County, Ohio. *Id.* The trustee at the time, JPMorgan Chase Bank, was seeking to recover assets that had allegedly been misappropriated from the Trust. *Id.* On May 14, 2008, following a bench trial, the Franklin County Probate Court found that Defendant Scherer had improperly diverted and misappropriated approximately $6.2 of the Trust's assets. *Id.* at 2. The Probate Court thus entered judgment against Defendant Scherer in the amount of $6,202,623 plus pre-judgment and post-judgment interest. *Id.* at 2-3. On November 24, 2009, the Tenth District Court of Appeals affirmed the Probate Court's decision. *Id.* at 3.

During the Probate Court proceedings, a conflict of interest arose amongst the defendants, as each of them, including Defendant Scherer, were being represented by the same counsel. The conflict was based on the fact that each of them, unlike Defendant Scherer, would benefit from the $6.2 million judgment against Defendant Scherer, as the collection of such meant there would be more Trust funds available to distribute to the whole. In other words, Defendant Scherer and the other beneficiaries had competing interests. To resolve that issue, the beneficiaries each signed a

14

conflict waiver, attesting that they fully understood the conflict, and that they believed it was in their best interest not to have the trustee collect the $6.2 million judgment against Defendant Scherer.  These statements were later placed on the record during a hearing in the Probate Court. *See* Doc. 37-22.

Following the hearing, the Probate Court issued written findings of fact and conclusions of law related to the conflict of interest.  *See* Doc. 37-21.  That opinion, in relevant part, read:

> 30.    Scherer, Jr., Swaddling, Johnson and Talbott, individually and collectively, have decided and agreed they do not want the Merits Judgment to be collected against Scherer, Sr., and they also do not want the Contempt Judgment collected against Scherer, Sr.  Based on the information provided to Park National Bank by Scherer, Sr., Scherer, Jr, their accountants and Mr. Acker, and based on the agreement by Scherer, Jr., Swaddling, Johnson and Talbott not to collect the Merits Judgment or the Contempt Judgment, the successor trustee has agreed not to collect the Judgments and has taken no action to collect them against Scherer, Sr.

> 41.    Ohio Rule of Professional Conduct 1.7(b)(2) allows a lawyer to represent multiple clients who have conflicting interests where "each affected client gives informed consent, confirmed in writing."

> 42.    In compliance with Rule 1.7(b)(2), Scherer, Sr., Scherer, Jr., Swaddling, Johnson and Talbott each has voluntarily given fully informed consent, confirmed in writing, to their joint legal representation in this action by attorneys Eliott R. Good and Van R. Shirey of the firm of Chorpenning, Good & Pandora Co., LPA.  Each of these parties has validly waived any and all claims and actual potential conflicts of interest between them.

> 43.    In accordance with Rule 1.7(b)(1), Attorneys Good and Shirley are able to provide competent and diligent representation to each of Scherer, Sr., Scherer, Jr., Swaddling, Johnson and Talbott, because each of these parties has agreed to act together as a unified group with a common purpose and common interests.  Each of Scherer, Sr., Scherer, Jr., Swaddling, Johnson and Talbott has knowingly and voluntarily aligned his or her goals and interests with Scherer, Sr. and each other so as to avoid adversity among themselves, by consenting to, acquiescing in, and ratifying Scherer, Sr.'s acts and omissions giving rise to the Merits Judgment and Contempt Judgment, and otherwise relating to Plaintiff, the trusts, and the trust owned companies. . . .

> 44.    In conformity with Rule 1.7(b)(3), joint representation of Scherer, Sr., Scherer, Jr., Swaddling, Johnson and Talbott by attorneys Good and Shirey is not precluded by Rule 1.7(c) because: (i) the representation is not prohibited by law, and (ii) the representation

15

does not involve the assertion of a claim by one client against another client in the same proceeding.

*Id.* at 9, 12-13. Relying in part on these findings, the Government argues that there are three reasons the Trust's forgiveness of the $6.2 million probate judgment against Defendant Scherer cannot constitute consideration for the WVHI stock: (1) the Trust is barred by judicial estoppel from taking the position that treating the $6.2 million judgment as satisfied is part of the consideration that it gave for the WVHI stock; (2) the probate judgment was worthless on December 31, 2015; and (3) satisfaction of an antecedent debt is not consideration under 26 U.S.C. § 6323(b)(1). The Court will address each of these arguments, in turn, below.

1) Judicial Estoppel

The Government's first argument is that the Trust is barred by judicial estoppel from taking the position that forgiveness of the $6.2 million judgement against Defendant Scherer was consideration for the WVHI stock. The Government maintains that because the Trust's beneficiaries previously took the position that they did not want the trustee to collect the judgment, and because the former trustee agreed not to collect the judgment, the Defendant Holmes cannot now take the contrary position and use the forgiveness of the judgment as new consideration.

"The doctrine of judicial estoppel prevents a party who successfully assumed one position in a prior legal proceeding from assuming a contrary position in a later proceeding." *Mirando v. United States Dept. of Treasury*, 766 F.3d 540, 545 (6th Cir. 2014). "Judicial estoppel is an equitable doctrine that preserves the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship, achieving success on one position, then arguing the opposite to suit an exigency of the moment." *Id.* To that end, three factors guide the Court's analysis in determining whether judicial estoppel applies:

16

> First, a party's later position must be clearly inconsistent with its earlier position. Second, [the Court must] inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second was misled. . . . A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Id.*

Here, judicial estoppel does not apply because Defendant Holmes' position -- that forgiveness of the $6.2 million probate judgment on December 31, 2015 was consideration for the WVHI stock -- is not clearly inconsistent with the former trustee's agreement not to collect the judgment. Importantly, there is a distinction between forgiving a debt and agreeing not to collect a debt. The former has the effect of resolving the debt whereas in the latter scenario the debt remains legally valid. While there is a strong argument that the value of forgiving the probate judgment is minimal where there was already an agreement not to act on the judgment, the Court cannot conclude that Defendant Holmes is judicially estopped from arguing that the Trust's forgiveness of Defendant Scherer's $6.2 million judgment served as part consideration for the WVHI stock.

### 2) Worth of Probate Judgment

Next, the Government argues that the $6.2 million probate judgment was worthless on December 31, 2015 because Defendant Scherer was insolvent at the time, making the judgment virtually uncollectable. The Government asserts that the probate judgment was junior to its federal tax liens, and thus, if Defendant Scherer's assets were liquidated to pay his debts, creditors with liens senior to the Trust would have exhausted the proceeds. As such, the Government maintains that "[n]o one would pay more than *de minimis* speculative value for the judgment." Doc. 76 at 21.

Defendant Holmes does not deny that Defendant Scherer would have been unable to pay the probate judgment on December 31, 2015. Nevertheless, Defendant Holmes contends that he believed, "in time," Defendant Scherer would have sufficient funds to pay the judgment in full. Based on his faith in Defendant Scherer's earning capacity, coupled with Defendant Scherer's plans for developing The Maples, Defendant Holmes attests that he estimated the value of the probate judgment to be around $900,000. *See* Doc. 89 at 24.

For reasons that will become clear in subsection (c) below, whether forgiveness of the probate judgment could serve as partial consideration for the WVHI stock, irrespective of the value placed on that judgment, is a moot inquiry. Therefore, the Court declines to place a numeric value on the probate judgment.

### 3) Antecedent Debt

Last, the Government argues that the Trust's forgiveness of the $6.2 million probate judgment against Defendant Scherer cannot constitute consideration for the WVHI stock because this is merely satisfaction of an antecedent debt, which does not amount to money or money's worth for purposes of 26 U.S.C. § 6323. The Court disagrees. While Defendant Scherer had a pre-existing legal obligation to pay the $6.2 million judgment, and satisfaction of his pre-existing duty is not consideration, the proper focus of the Court's inquiry is the consideration provided by the Trust. *See Moroch v. United States*, 647 F. Supp. 2d 137, 142 n.3 (D. Conn. 2009) ("In opposing Laurie's argument that she qualifies as a purchaser of Todd's interest, the IRS observes that Todd was under a pre-existing obligation to pay the arrearages in his support payments. The consideration provided by Todd might have been inadequate. But the consideration that must be analyzed is the consideration provided by Laurie."). Here, the Trust had no prior legal obligation

to release Defendant Scherer from his debt. For this reason, the forgiveness of Defendant Scherer's $6.2 million probate judgment was not satisfaction of an antecedent debt.[7]

### c. **Fraudulent Transfer**

The Government's final argument is that the tax liens against Defendant Scherer followed the transfer of the WVHI stock to the Trust because the transfer was fraudulent under 28 U.S.C. § 3304(a)(2). This argument pertains only to whether the Trust's acquisition of the WVHI stock in exchange for the forgiveness of Defendant Scherer's $6.2 million probate judgment constitutes a fraudulent transfer.

Section § 3304(a)(2), in relevant part, provides that a transfer made by a debtor is fraudulent as to a debt to the United States which arises before the transfer is made if "the transfer was made to an insider for an antecedent debt, the debtor was insolvent at the time; and the insider had reasonable cause to believe the debtor was insolvent." 28 U.S.C. § 3304(a)(2)(A)-(B). Here, it is without question that Defendant Scherer transferred the WVHI stock to the Trust to satisfy an antecedent debt, as his obligation to pay the $6.2 million probate judgment arose before he signed the Release and Settlement Agreement. *See In re Internet Corp.*, 372 B.R. 358, 364 (E.D. Mich. 2007) ("[A]n antecedent debt exists when 'the liability for payment' precedes the transfer."). Further, it is undisputed that the Government's federal tax liens against Defendant Scherer attached to the WVHI stock prior to this transfer. Finally, neither Defendant Holmes nor Defendant Scherer contest the fact that Defendant Scherer was insolvent at the time of this transfer, and that as

---

[7] The Government relies primarily on three out-of-circuit cases for the proposition that performance of a pre-existing legal duty is not consideration under 26 U.S.C. § 6323. *See United States v. Pavenick*, 197 F. Supp. 257, 258 (D.N.J. 1961); *United States v. Phillips*, 715 F. Supp. 81, 84 (S.D.N.Y 1989); *United States v. Sabby*, 2014 WL 988459, at *3-4 (D. Minn. Mar. 13, 2014). This Court, however, declines to follow their lead as those decisions focus on the consideration proffered by the assignor of a security interest as opposed to the assignee.

Trustee, Defendant Holmes knew Defendant Scherer was insolvent. Hence, whether the Trust's acquisition of the WVHI stock in exchange for the forgiveness of the probate judgment constitutes a fraudulent transfer under § 3304(a)(2) turns on whether Defendant Holmes, as Trustee, can be considered an insider.

28 U.S.C. § 3301(5) provides that an "insider" includes: (i) a relative of the debtor or of a general partner of the debtor; (ii) a partnership in which the debtor is a general partner; (iii) a general partner in a partnership described in clause (ii); or (iv) a corporation of which the debtor is a director, officer, or person in control. 28 U.S.C. § 3301(5)(A)(i)-(iv). Additionally, courts have recognized "non-statutory" insiders as individuals whose interactions with the debtor were not at "arm's length." *See U.S. Bank Nat'l Assoc. ex rel. CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge, LLC*, 138 S. Ct. 960, 963 (2018) ("Courts have additionally recognized as insiders some persons not on that list—commonly known as 'non-statutory insiders.' The conferral of that status often turns on whether the person's transaction with the debtor (or another of its insiders) were at arm's length.").[8] Critically, whether an individual qualifies as a non-statutory insider is necessarily a fact-intensive inquiry. *See In re Cheerview Enters., Inc.*, 586 B.R. 881, 898 (E.D. Mich. 2018) ("But even if an entity is not a statutory insider included in the list in § 101(31), the statute permits a court to examine the specific facts surrounding a particular relationship of an entity to the debtor to determine whether that relationship, although not making an entity a statutory insider, is one that calls for closer scrutiny than an arm's-length relationship. If so, a court may still find such entity to be an insider. These relationships are frequently referred to as non-statutory insiders.").

---

[8] While the Supreme Court was discussing the recognition of non-statutory insiders within the context of 11 U.S.C. § 101(31), this statute defines an insider the same as 28 U.S.C. § 3301(5). Hence, recognition of non-statutory insiders under § 3301(5) apply with equal force.

Here, the Court finds that the Trust was a non-statutory insider for purposes of § 3301(5). First, the beneficiaries of the Trust are all relatives of Defendant Scherer. These relationships fit squarely within the reach of § 3301(5). Second, Defendant Holmes, as Trustee, has had a close, non-arm's length relationship with Defendant Scherer. In fact, Defendant Holmes has already been found by a Florida Bankruptcy Court to have acted in collusion with Defendant Scherer in these tax-related cases. In January 2019, Defendant Holmes petitioned a Bankruptcy Court in the Middle District of Florida to lift a stay in Defendant Scherer's bankruptcy case, so he could pursue a declaratory judgment against Defendant Scherer in a separate action ("District Court Litigation"). The Bankruptcy Court made several telling findings, questioning the efficacy of Defendant Holmes' actions and suggesting he was working in cahoots with Defendant Scherer to undermine court proceedings:

> The Court notes that Mr. Holmes was appointed Trustee of the family trust in 2013. He waited over five years to seek the "clarification" requested in the District Court Litigation. The Court also notes the District Court Litigation was filed on the eve of of (sic) a trial, scheduled for April 3-4, 2019, to determine how the Debtor will pay his outstanding federal tax liability to the United States.[9]
>
> . . .
>
> Even though the Debtor consents to stay relief to allow the District Court Litigation to proceed, the Court finds this "consent" is largely collusive. A friendly party filed the District Court Litigation to manipulate claims pending in this Chapter 11 case. Allowing the District Court Litigation to proceed would impair this Court's ability to resolve the pending bankruptcy case, could result in inconsistent decisions, and would be a significant distraction from the main issues in this case approaching its zenith. I conclude that the District Court Litigation was belatedly filed to delay this bankruptcy case by shifting forums and sowing confusion. Such tactics do not establish cause to modify the automatic stay.

Doc. 75-19. Moreover, as part of the Release and Settlement Agreement, Defendant Holmes was required to submit a plan for the distribution of Trust assets that was "acceptable" to Defendant

---

[9] "Debtor" refers to Defendant Scherer.

Scherer. *See* Doc. 37-23 at 4 ("The Trust(s) exercise of the option herein granted is conditioned upon the Trust(s) having . . . submitt[ed] a plan of actual distribution of assets and values of the Trust(s) acceptable to the Beneficiary and his representatives[.]"). It follows that Defendant Scherer exerted a degree of influence and control over Defendant Holmes in connection with the Release and Settlement Agreement that is characteristic of an insider relationship. *See In re Piccinini*, 439 B.R. 100, 104 (E.D. Mich. 2010) ("A showing of actual control over the debtor is not necessary; instead, the court asks 'whether there is a close relationship [between debtor and creditor] and . . . anything other than closeness to suggest that any transactions were not conducted at arm's length.'") (quoting *In re Winstar Communications, Inc.*, 554 F.3d 382, 396-97 (3d Cir. 2009)). For these reasons, the Court finds that the Trust's forgiveness of Defendant Scherer's $6.2 million probate judgment in exchange for the WVHI stock involved a fraudulent transfer, such that this consideration cannot serve as a basis for the Trust's protected purchaser status under 26 U.S.C. §§ 6323(b)(1)(A) and (h)(6).

In sum, a material question of fact remains as to whether the Trust purchased the WVHI stock within the meaning of 26 U.S.C. §§ 6323(b)(1)(A) and (h)(6), such that it acquired the stock free of the Government's federal tax liens. While the Trust's forgiveness of Defendant Scherer's $6.2 million probate judgment cannot serve as protected consideration for the WVHI stock, the Trust's obligation to pay his litigation expenses might be sufficient standing alone. At this juncture, however, there is an open question surrounding whether the Release and Settlement Agreement required the Trust to pay for Defendant Scherer's litigation expenses in pending and future tax-related cases. If a jury were to answer this question in the affirmative, thereby finding the Trust's obligation to be ongoing, this accruing expense might constitute full and adequate consideration for the WVHI stock under §§ 6323(b)(1)(A) and (h)(6).

## V. CONCLUSION

For the reasons stated herein, the Court **GRANTS IN PART** and **DENIES IN PART** the Government's Motion for Summary Judgment [#74]; **DENIES** Defendant Scherer's Motion for Summary Judgment [#51]; and **DENIES** Defendant Holmes' Motion for Summary Judgment [#63].

**IT IS SO ORDERED.**

_____
**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: May 12, 2020**