**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | : |
| | :     **Case No. 2:19-cv-03634** |
| **Plaintiff,** | : |
| | :     **JUDGE ALGENON L. MARBLEY** |
| **v.** | : |
| | :     **Magistrate Judge Jolson** |
| **RONALD E. SCHERER, et al.,** | : |
| | : |
| | : |
| **Defendants.** | : |

**OPINION & ORDER**

**I. INTRODUCTION**

This matter is before the Court on the Government's Motion for Order Appointing Receiver to Market for Sale the Stock and/or Assets of Maples Health Care, Inc. and West Virginia Healthcare, Inc. (ECF No. 139). For the reasons set forth below, the Court **GRANTS** the Government's motion to appoint receiver.

**II. BACKGROUND**

On December 16, 2005, the United States Government made assessments of federal income taxes against Defendant Ronald E. Scherer for unpaid amounts during tax years 1990, 1991, and 1992. (ECF No. 76 at 10). At the time, Mr. Scherer owned 100 percent of the stock of Maples Health Care, Inc. ("Maples") and West Virginia Health Care, Inc. ("WVHI"). (*Id.* at 10−11). Maples is an operating company that runs an assisted living care and skilled nursing home business in a facility that is owned by WVHI. Together, Maples and WVHI are Mr. Scherer's most valuable assets. (ECF No. 139 at 2). Under 26 U.S.C. § 6321, when an individual is liable for a tax and then neglects or refuses to pay it after a demand, the amount owed becomes a lien in favor of the

1

Government upon the individual's property and rights to property. Accordingly, federal liens in favor of the Government attached to Mr. Scherer's property, including stock in Maples and WVHI.

On May 15, 2014, the Government initiated a civil action against Mr. Scherer in the Southern District of Ohio, seeking to enforce federal tax liens on two properties (the "2014 Civil Action"). (2:14-cv-00452, ECF No. 1). On September 5, 2014, during the pendency of 2014 Civil Action, Mr. Scherer signed an agreement that gave his family trust, the Roger E. Scherer Trust ("Trust"), of which Defendant Douglas Q. Holmes is the Trustee, the option to acquire Mr. Scherer's stock in WVHI. (*Id.*, ECF No. 12 at 12). In exchange, the Trust was supposed to intervene in the 2014 Civil Action, pay for Mr. Scherer's litigation expenses, and treat a prior $6.2 million probate court judgment against Mr. Scherer as satisfied. (*Id.* at 12). The Trust exercised its option to acquire the WVHI stock on December 31, 2015. (*Id.*).

On July 26, 2017, this Court entered judgment in favor of the Government and against Mr. Scherer in the 2014 Civil Action. (*Id.*, ECF No. 193). In its Opinion and Order granting the Government's Motion for Summary Judgment, the Court concluded:

> Judgment is granted in favor of the Plaintiff United States of America and against Defendant Ronald E. Scherer for his liability for federal income taxes for 1990, 1991, and 1992 in the amount of $5,429,482.54, plus statutory accruals as allowed by law from June 30, 2017, until fully paid.

(*Id.*).

Mr. Scherer never paid his outstanding balance, which is now nearly $6 million due to statutory accruals that have attached. (2:19-cv-03634, ECF No. 139 at 1). As a result, the Government brought the case sub judice to enforce its federal tax liens on Mr. Scherer's stock in Maples, Inc. and WVHI and to appoint a receiver to sell the two corporations. (ECF No. 1 at 1).

After initiating the litigation, the Government sought a preliminary injunction on August 20, 2019 (ECF Nos. 3, 10). The Court held a hearing on the Government's motion on September

2

20, 2019, and entered the Preliminary Injunction, which primarily prohibited the Defendants, including Mr. Scherer, from engaging in certain actions until the Court otherwise permits. (ECF No. 45). Notably, the Preliminary Injunction also reserved the Government's right to move for the appointment of a temporary receiver at any time. (*Id.*).

Since then, the Government and Mr. Scherer have both moved for summary judgment. Specifically, Mr. Scherer asked the Court to invalidate the Government's tax assessments (ECF No. 51), which the Court denied (ECF No. 104). The Government asked the Court to determine that the federal tax liens against Mr. Scherer attach to the both the Maples, Inc. and WVHI stock. (ECF No. 74). The Court initially granted in part and denied in part this motion, holding that the lien attached to the Maples, Inc. stock but that an open question of fact remained as to whether the lien attached to the WVHI stock. (ECF No. 104). After the Government moved for reconsideration on May 29, 2020 (ECF No. 108), however, the Court held that the Government's federal tax liens against Mr. Scherer do in fact attach to both the Maples, Inc. stock and the WVHI stock (ECF No. 138).

On December 18, 2020, the Government submitted a Motion for Order Appointing Receiver to Market for Sale the Stock and/or Assets of Maples, Inc. and WVHI. (ECF No. 139). Mr. Scherer filed a response in opposition, and the Government submitted its reply on March 1, 2021. (ECF Nos. 149, 161). In the meantime, Mr. Holmes filed a Second Motion for Attorney Fees (ECF No. 146), and Mr. Scherer submitted a Second Motion to Disqualify Judge Algenon L. Marbley from presiding over this case (ECF No. 147). All but the motion sub judice have been decided.[1]

---

[1] On March 31, 2021, the Court entered judgment denying the Second Motion for Attorney Fees and the Second Motion to Disqualify Judge Algenon L. Marbley. (ECF No. 169).

## III. LAW & ANALYSIS

The Government asks the Court to appoint Watson McCollister as receiver for the purpose of marketing and selling the stock and/or assets of Maples and WVHI. (ECF No. 139 at 2). Mr. McCollister is an experienced broker of senior living facilities in the United States, and he has agreed to work on a straight commission basis. (*Id.* at 2−3). The Government provides a proposed order, which includes detailed provisions setting forth the duties, responsibilities, powers, and authority of the receiver, Mr. Scherer, Mr. Holmes, and the directors, officers, and employees of Maples and WVHI. (ECF No. 139-1). It also requires Mr. McCollister to obtain a $500,000 receiver bond and describes that Mr. McCollister and Defendant Summit Community Bank have agreed to share the cost without reimbursement. Defendant Summit Community Bank has indicated that it does not object to the Government's motion and proposed order, but Mr. Scherer and Mr. Holmes do oppose. (ECF Nos. 149, 150).

### A. Authority to Order a Private Sale

Rule 66 of the Federal Rules of Civil Procedure allows that "anyone showing an interest in certain property or a relation to the party in control or ownership thereof" to seek the appointment of a receiver upon "justify[ing] conservation of the property by a court officer." *LINC Acquisition One, LLC v. J4 Broadcasting of Cincinnati, Inc.*, No. 1:04-cv-810, 2005 WL 8162170, at *2 (S.D. Ohio Dec. 6, 2005) (quoting *Santibanez v. Wier McMahon & Co.*, 105 F.3d 234, 241−42 (5th Cir. 1997)). Additionally, Rule 69 authorizes federal district courts to appoint a receiver to aid the enforcement of a judgment held by a plaintiff. The process for appointment must comport "with the practice and procedure of the state in which the district court is held" unless "any statute of the United States governs" instead. Fed R. Civ. P. 69.

4

Here, there is an applicable tax-specific federal statute that authorizes the Court to appoint a receiver to liquidate assets in order to enforce a federal tax lien: 26 U.S.C. §§ 7402(a) and 7403(d). These statutes therefore govern the Court's process for appointment instead of Ohio law, per Rule 69. Section 7402(a) states that the Court may craft any order necessary and appropriate to enforce federal tax laws and that this authority supplements remedies to enforce tax laws contained in other statutes:

> The district courts of the United States at the instance of the United States shall have such jurisdiction to make and issue in civil actions, writs and orders of injunction, and of *ne exeat republica*, orders appointing receivers, and such other orders and processes, and to render such judgments and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws. The remedies hereby provided are in addition to and not exclusive of any and all other remedies of the United States in such courts or otherwise to enforce such laws.

Additionally, Section 7403(d) specifically provides that the Court may appoint a receiver to enforce a federal tax lien when there has been a refusal or neglect to pay a tax and when the Court has adjudicated the merits of all claims to and liens upon the property:

> In any such proceeding, at the instance of the United States, the court may appoint a receiver to enforce the lien, or, upon certification by the Secretary during the pendency of such proceedings that it is in the public interest, may appoint a receiver with all the powers of a receiver in equity.

Together, Sections 7402(a) and 7403(d) provide the Court with broad discretion to appoint a receiver to liquidate property subject to federal tax liens to assist the United States in the collection of taxes. This discretion includes the authority to craft an order that specifies the powers, duties, and authority of a receiver in conducting a sale of rights and property; the terms, conditions, and procedures of the sale; and the nature, location, date, and time of the sale. These sections also provide the Court with the power to authorize a receiver to conduct a sale of rights or property in a manner similar to the way they would be sold in the commercial market. The Court therefore

concludes that it has the authority to appoint a receiver and to authorize the receiver to facilitate a private sale in this case.

Mr. Holmes erroneously argues that any order the Court enters authorizing the sale of the Maples and WVHI must be entered pursuant to 28 U.S.C. § 2001. (ECF No. 150 at 1−4). Section 2001 pertains to court-ordered sales of real property and provides for sales by public auction under § 2001(a) and private sales under § 2001(b). If the sale occurs privately, § 2001(b) also requires three appraisals, public notice, and an opportunity for a 10-percent upset bid. 28 U.S.C. § 2001(b); *see also SEC v. Private Equity Mgmt. Grp., LLC*, No. CV 09–2901 PSG (Ex), 2009 WL 10676006, at *2−3 (C.D. Cal. Nov. 20, 2009).  The statute, however, provides the Court with discretion as to whether it will follow the Section 2001 procedure when the property at issue is personalty, such as stock in a corporation: "Any personalty sold under any order or decree of any court of the United States shall be sold in accordance with section 2001 of this title, *unless the court orders otherwise.*" 28 U.S.C. § 2004 (emphasis added); *see also United States v. Kerner*, No. 00-75370, 2003 WL 22905202, at *2 (E.D. Mich. Oct. 24, 2003) (citing cases where courts exercised discretion to depart from Section 2001 procedures and permitting a private sale of stock in a corporation). Because the tax liens are on 100% of the Maples and WVHI stock, it is within the Court's discretion to depart from the § 2001 procedures and to follow §§ 7402−03 instead. To the extent that the sale of the Maples and WVHI property can be characterized as a sale of personal property, the Court maintains its discretion to enter the order under either §§ 2001 and 2004 or §§ 7402(a) and 7403(d).

### 1. The Possibility of a Separate Facility Sale

It is possible that a party could propose a separate purchase agreement for only the real property portion of Maples' and WVHI's assets (i.e., the facility). Even if this separate agreement

were part of a set of purchase agreements by which all of the assets to be liquidated were sold a single closing, the sale may constitute a standalone sale of real property, depending on the circumstances. The Court therefore considers whether a receiver sale of real property under §§ 7402(a) and 7403(d) is also governed by § 2001(b), when the real property is to be sold along with all of a business' personal property, which is subject to a federal tax lien.

At least one district court in the Sixth Circuit has explicitly described the appointment of a receiver pursuant to §§ 7402(a) and 7403(d) as an "alternative procedure" to sales under § 2001(a) or (b): "Courts have described the appointment of a receiver pursuant to 26 U.S.C. §§ 7402−7403 as an alternative procedure to public auction under § 2001(a) or a private sale under § 2001(b). *United States v. Wagster*, No. 16-13172, 2017 WL 4479730, at *1 (E.D. Mich. Oct. 23, 2017) (citing *United States v. Poteet*, 792 F. Supp. 2d 1201, 1208 (D.N.M. 2011) ("The Court orders sale of the Property either through a real estate agent acting as a receiver or under 28 U.S.C. § 2001."). This case suggests that a district court may appoint a receiver to conduct a receiver sale of personal or real property under §§ 7402(a) and 7403(d) independent of the requirements of § 2001(a) and (b). *See also United States v. Zabka*, 900 F. Supp. 2d 864, 867−69 (C.D. Ill 2012) (granting the Government's motion to appoint a receiver for the defendants' "property and rights to property included in their 100 percent ownership interest" in a company "[b]ecause it is within this Court's broad statutorily prescribed purview to do so"); *United States v. Bartle*, 2002 WL 75437, at *4 (S.D. Ind. Jan. 16, 2002). *But see United States v. Kilgore*, No. 93-1094-PFK, 1994 WL 401066, at *2 (D. Kan. July 5, 1994) ("Section 7403 sales are governed by 28 U.S.C. §§ 2001 et seq. . . .").

None of the above cases offers direct analysis as to whether the Court may enter an order authorizing a receiver to sell real property under §§ 7402(a) and 7403(d) independent of the requirements of § 2001(b). The Court notes, however, that basic principles of statutory

construction support the two statutes' independence from each other. When "there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment." *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987). Here, as its very title announces, § 2001 pertains to the "[s]ale of realty generally." 28 U.S.C. § 2001. Sections 7402 and 7403, on the other hand, together comprise a specific statute detailing procedures for bringing an "[a]ction to enforce [a] lien or to subject property to [the] payment of [a] tax." 26 U.S.C. § 7403. The Court reads the latter, more specific statute to grant it discretion to craft orders for the unique purpose of enforcing federal tax laws, including those providing for tax collection, unconstrained by § 2001. A contrary reading would render Section 7402 partially ineffective, in so far as it grants jurisdiction to the district courts to make "orders appointing receivers" and "such other orders . . . as may be necessary or appropriate for the enforcement of the internal revenue laws." *Id.* § 7402; *see also United States v. A. P. Woodson Co.*, 198 F. Supp. 582, 585 (D.D.C. 1961) ("[I]f it can be prevented, no clause, sentence, or word shall be superfluous, void or insignificant."). Consequently, the Court holds that, at least in some circumstances, it may order a receiver to sell a company's assets pursuant to Section 7403, even when there is a possibility that the sale of the company's facility may occur through a separate purchase agreement from its other assets.

### B. Exercise of Discretion

The Court next considers whether it should exercise its discretion to dispense with the requirements of § 2001 in this matter. A number of practical considerations persuade it that it should.

First, the Government is not requesting or proposing a discrete sale of real property. Instead, it asks for the sale of the stock and/or all of the assets of two corporations that have a

symbiotic relationship all in a single closing. It imagines one buyer or related buyers that purchase all of the stock and assets of both Maples and WVHI. Even if the buyer or buyers prefer to structure their purchase in a way that facilitates a bifurcated purchase of the facility, the same buyer or buyers must buy all the remaining assets that are for sale—which are all personal property—simultaneously. This type of sale does not appear to be contemplated by § 2001(b).

Second, the § 2001(b) requirement of obtaining three appraisals would impose additional costs that would reduce the net sale proceeds from the assets and that would delay the sale. The appraisals would have to be prepared before the assets are listed for sale, not during the marketing process or after the receiver obtains and recommends a purchase agreement. The proposed receiver, Mr. McCollister, projects that these appraisals would take at least nine months to secure. (ECF No. 161 at 9). The additional costs and time are particularly relevant here because Mr. Scherer, Mr. Holmes, and their associates have delayed the collection of Mr. Scherer's income taxes for a long period of time, resulting in the Government's expenditure of significant resources to collect the assessed taxes.

Finally, the Government has proposed additional mechanisms to ensure that the Maples and WVHI assets yield the highest possible price. The receiver has both a duty and a financial incentive to obtain as many offers as possible and to negotiate with buyers to foster a competitive sale price, which should be consistent with the fair market value. Additionally, the Government must submit the sale recommended by the receiver to the Court for its approval, and Mr. Scherer and Mr. Holmes may oppose before the Court reaches its determination. In essence, this process bakes in some of the procedural safeguards that the appraisal process under § 2001(b) provides. For these reasons, the Court believes it proper to exercise its discretion to dispense with the § 2001(b) requirements and **GRANTS** the Government's motion to appoint a receiver.

Accordingly, the Court hereby **ORDERS** the following:

A. **Preliminary Injunction Entered September 20, 2019** − Except in the event of an inconsistency of terms, this order does not alter the Agreed Preliminary Injunction and Order entered on September 20, 2019 ("Preliminary Injunction") (ECF No. 45), and the Defendants and those acting in concert with them shall continue to abide by the restrictions in that order. In the event of a conflict of meaning, the terms of this Order shall govern and supersede those in the Preliminary Injunction.

B. **Receiver Appointed** − Watson McCollister of, and in association with, Senturian Senior Housing Brokerage (1017 17th Avenue S., Nashville, Tennessee 37212, Phone: (615) 707-9455, Fax: (615) 250-0505, Email: mccollister@senturian.net) is appointed as Receiver for the limited purposes of marketing and selling the stock and/or assets of Maples and WVHI, subject to the approval of any purchase agreement or contract by this Court prior to sale.

C. **Federal Tax Liens Being Enforced** − The federal tax liens for Mr. Scherer's liabilities that are the subject of the judgment in Case No. 2:14-cv-0452 may be enforced upon the stock and/or assets of Maples and WVHI through a sale by the Receiver.

D. **Sale of Stock and/or Assets** − Because the federal tax liens for Mr. Scherer's liabilities that are the subject of the judgment in Case No. 2:14-cv-0452 attach to 100% of the stock of both companies, and because some buyers may prefer, for tax-related or other reasons, to purchase the assets instead of the stock of one or both of those entities and therefore may pay more for the assets than for the stock, the Receiver may market and consider purchase offers for the assets or the stock and may, with the consent of the United States, tentatively accept a purchase offer for the stock and/or assets of Maples and WVHI, provided the purchase contract is expressly subject to approval by this Court after notice to Defendants and an opportunity to object.

E. **Sale Free and Clear of all Right, Title, Lien, Claim or Interest** − The stock and/or assets of Maples and WVHI shall be sold in a sale conducted by the Receiver, according to law, with all liens thereon attaching to the proceeds of sale in existing order of priority, but otherwise, the sale shall be free and clear of any right, title, lien, claim or interest of any of the plaintiff and Defendants herein, without any right of redemption, and that the proceeds of the sale shall be distributed to plaintiff and the Defendants as set forth below.

F. **Receiver to Market and Sell Under Terms and Conditions in this Order** − The Receiver shall market the stock and/or assets of Maples and WVHI for sale under the terms and conditions set forth below.

G. **Receiver's Duties, Responsibilities, Powers, Authority, and Protections** − In serving as Receiver for a limited purpose, Watson McCollister shall have the following duties, responsibilities, powers, authority, and protections, and Defendant Ronald Scherer and Defendant Douglas Holmes, their counsel, and their associates and the directors, officers, and employees of Maples and WVHI shall be subject to and abide by the following guidelines and requirements in the performance of their work duties and responsibilities with respect to Maples and WVHI:

1. **Access to the Facility** − For purposes of executing his duties, responsibilities, power, and authority under this Order, and to the extent not prohibited by Federal, State or local law, the Receiver shall have access to, and permission to enter, photograph, make videos of, tour, and inspect the facility operated by Maples and owned by WVHI. In accessing, photographing, making videos, touring, and inspecting the facility, the Receiver shall comply with all rules, regulations, and laws of local, county, state, and federal authorities, insurance policies of Maples and WVHI, and the internal procedures of the facility. In taking photographs of the facility, the Receiver shall respect the privacy of the residents of

the facility. The Administrator, management, and employees of the facility shall cooperate with, and assist, the Receiver and prospective purchasers in touring and inspecting the facility and taking photographs and videos. To the extent that any rules, regulations, and laws of local, state, and federal authorities or the provisions of any insurance policies of Maples and WVHI preclude the Receiver from taking photographs or making videos of the facility, the Administrator, management, and employees of the facility shall take the photographs and make the videos requested and described by the Receiver provided that in doing so, they shall comply with all rules, regulations, and laws of local, county, state, and federal authorities, and the insurance policies of Maples and WVHI and respect the privacy of the residents of the facility. Alternatively, to the extent that internal procedures of the facility preclude the Receiver or prospective purchasers from taking photographs or making videos of the facility or touring or inspecting the facility, but the laws of local, county, state, and federal authorities and insurance policies of Maples and WVHI do not preclude the Receiver from engaging in those activities, the Receiver has the power and authority to adjust the internal rules to permit such photographing, video-making, touring or inspecting provided that reasonable and adequate measures are taken to insure the health and safety of the residents and employees of Maples and WVHI, the Receiver, and any prospective purchasers and to insure the safety and maintain the condition of the facility owned by WVHI. If the Receiver or his colleagues and representatives intend to take a prospective purchaser on a tour or inspection of Maples, WVHI and/or their assets, they shall provide notice of at least 12 hours by email and/or telephone (which may be by voicemail if not answered) to three employees of Maples and/or WVHI that those entities designate for the Receiver for this purpose. Maples and WVHI may not designate Ronald

12

E. Scherer or Douglas Holmes for this purpose. One of the designated employees of Maples and WVHI shall accompany the Receiver and prospective purchasers on tours or inspections or when photographs are to be taken or videos made of the facility, and they shall truthfully and fully answer questions of the Receiver and prospective purchasers and provide access to the Receiver and prospective purchasers to the facility provided that such access does not: (1) interfere with the privacy of the residents; (2) interfere with the provision of care to the residents; or (3) violate local, state, federal law or the terms of insurance policies of Maples and/or WVHI. When taking photographs or making videos of the facility or during a tour or inspection of the facility, the Receiver and any prospective purchaser shall follow all safety protocol of the assisted living care and nursing home facility, including, but not limited to, wearing a mask, gloves, and/or shoe coverings to protect against the transmission of Covid-19. The Receiver, his colleagues and representatives, and any prospective purchasers taking photographs or making videos of the facility or touring or inspecting the facility shall: (1) be respectful of the privacy of the residents; (2) not interfere with the provision of care to the residents; (3) attempt to be unobtrusive during their photography, videography, tour or inspection; and (4) be respectful of staff and follow the rules and procedures of the facility.

2. **Licenses and Permits** − The Receiver shall have access to all licenses, permits, and certificates of need of Maples and WVHI and their owner to operate the assisted living care and skilled nursing home businesses that currently is operated by Maples in the facility owned by WVHI as well as any other similar or related licenses, permits, and certificates of need that they have but are not making use of at this time, and Maples and WVHI and their owners, employees, and contractors shall assist the receiver in obtaining, securing,

and renewing the licenses, permits, and certificates of need and in transferring them to a purchaser of the stock and/or assets of Maples and WVHI. The Receiver shall have authority in his discretion, but shall not be required, to take possession of and secure the licenses, permits, and certificates of need but shall, upon taking possession, make them available to the directors, officers, and employees of Maples and WVHI as necessary for the ongoing operations of Maples and WVHI. The Receiver may show the licenses, permits and certificates of need to prospective purchasers and may make copies of them available to prospective purchasers of the stock and/or assets of Maples and WVHI.

3. **Books and Records** − The Receiver shall have access to, the right to review, and the right to make copies of the books, records, journals, ledgers, financial account statements, profit and loss statements, balance sheets, financial statements, loan and credit records, appraisals, valuations, any other financial and/or regulatory documents or records, client lists, contractual agreements, and any legal or litigation-related filings or correspondence, memoranda, position papers, advice, risk management assessments and recommendations or other documents of Maples and WVHI. The Receiver shall have the right to make them or copies of them available to prospective buyers of the stock and/or assets of Maples and WVHI, subject to requiring them to execute confidentiality agreements if appropriate. This authority extends to every kind of paper or electronic record of Maples and WVHI, whatsoever and wherever located, belonging to or in their possession or in the possession of their accountants, attorneys, or other agents, and includes computer hard drives, computer disks, external drives, computer servers, telephone records, and other informational resources of or in the possession of the Defendants. Mr. Scherer, Defendant Holmes, their counsel, accountants, financial professionals, and associates and directors,

officers, employees, and contractors of Maples and WVHI shall cooperate with, and assist, the Receiver, upon his request, in obtaining access to any such documents or records of Maples and WVHI. All banks, brokerage firms, financial institutions, and other business entities which have possession, custody, or control of any assets, funds, or accounts in the name of, or for the benefit of, Maples and/or WVHI shall provide the Receiver with any requested account records.

4. **Operational Information and Data –** Mr. Scherer, Defendant Holmes, their counsel, accountants, financial professionals, and associates and directors, officers, employees and contractors of Maples and WVHI shall cooperate with, and assist the Receiver, upon his request, in obtaining operational information and data of Maples and WVHI, including, but not limited to, staffing reports, patient census, the Resource Utilization Groups (RUGs) for the facility operated by Maples and owned by WVHI, which is a patient classification system for nursing home patients used by the Federal government to determine reimbursement levels for nursing homes and categorizes residents into payment groups based upon their care and resource needs, and the resident payer mix, which shows whether each residents' rent is paid by the Veterans Administration, Medicare, Medicaid or private pay.

5. **Previous Distributions to Mr. Scherer, Trusts in which He Is a Beneficiary, and Businesses in which He Owns an Interest or for which He Performs Services –** The Receiver also shall immediately review the books and records to determine the date, amount, and purpose of any distributions of the funds of Maples and/or of WVHI that were made on or after January 1, 2017, which is a few months before Mr. Scherer filed a Chapter 11 petition in In re Ronald E. Scherer, Case No. 6:17-bk-02004 (U.S.B.C. M.D. Fla.), to

(a) Mr. Scherer, (b) any trust of which he is the grantor and/or a beneficiary, and (c) any business other than Maples and WVHI of which he or his family members or any trust of which he is the grantor and/or a beneficiary has an ownership interest, including, but not limited to, Intelligent Perimeter Systems, Inc. and National Sign & Signal, Inc. Mr. Scherer, Mr. Holmes, their counsel and associates, the employees of Maples and WVHI, and contractors of Maples and WVHI, including any outside accountants, shall cooperate with, and assist, the Receiver in obtaining this information and evidence of it. The Receiver shall inform counsel for the United States of any such significant distribution(s) and provide counsel for the United States with all available evidence of them that they request. For this purpose, the Receiver may request the assistance of Mr. Scherer, Mr. Holmes, their counsel, accountants, financial professionals, and associates, and any officers, directors, employees, and contractors of Maples and/or WVHI, and they shall cooperate with and assist the Receiver.

6. **Authority to Freeze Accounts** − Should the Receiver suspect wrongdoing or an ongoing or imminent violation by the Defendants of any of the terms of this Order or of the Preliminary Injunction, he shall also have the authority to freeze the companies' bank or other financial accounts or borrowing accounts, subject to having the United States promptly file a motion explaining the perceived need for the freeze and seeking such other relief as it deems appropriate, and all banks or other financial institutions are hereby ordered to comply with any such directive from the Receiver. Notwithstanding the foregoing, the Receiver shall not have authority to withdraw funds from accounts or otherwise use or commit the use of funds for specific purposes (but may make recommendations to company management regarding such usage). Plaintiff United States

and Defendant Summit Community Bank retain the right to agree to permit the companies to use funds frozen by the Receiver for payment of specific obligations and nothing herein effects the ability of Defendants to continue to make payments on their obligations to Summit.

7. **Bond** − The Receiver shall be required to maintain a $500,000 receiver bond during the pendency of the Receivership, and is hereby ordered to well and faithfully perform the duties of his office, and to abide by and perform all duties set forth in this Order. The Receiver shall pay for the cost of the first $250,000 of coverage, and Defendant Summit Community Bank shall pay the cost of the additional $250,000 of coverage. The Receiver and Summit Community Bank shall not be reimbursed for their payment toward the bond.

8. **Operations** − The Receiver shall not be responsible for, and shall not engage in, the operations of Maples and WVHI, except to the extent, if at all, that his fulfillment of his duties and responsibilities and the exercise of his powers and authority under this Order may be deemed engagement in their operations. The directors, officers, employees, and any contractors of Maples and WVHI shall continue to be responsible for and carry out the operations of Maples and WVHI and comply with this Order.

9. **Directors and Officers** − Directors and officers of Maples and WVHI shall cooperate with and assist the Receiver in fulfilling his responsibilities and duties under this Order. The Directors and Officers shall fulfill their responsibilities and duties in operating the Maples and WVHI while the Receiver markets and sells their stock and/or assets.

10. **Duty of Officers, Directors, Managers, and Staff to Pay Ordinary and Necessary Expenses and Obligations** − The officers, directors, managers, and employees of Maples and WVHI shall pay the ordinary and necessary expenses and obligations of Maples and

of WVHI. To the extent Maples and WVHI have any outstanding and overdue expenses and obligations, they shall take appropriate action to pay them as soon as possible. As for current and new expenses and obligations incurred in the ordinary course of business, the officers, directors, managers, and employees of Maples and WVHI shall pay them on a timely basis provided that there is sufficient income, assets, and credit agreements or facilities with which to pay them.

11. **Power to Use Assets and Income** − The officers, directors, managers, and employees of Maples and WVHI shall continue to have the power and authority to use all assets and income of Maples and WVHI to pay the ordinary and necessary expenses and obligations of the corporations, but for no other purposes, except to the extent permitted by the Preliminary Injunction. If the officers, directors, managers, and employees of Maples and WVHI believe that there is a need to incur and pay for an extraordinary expense or obligation for those entities, such as renovation work costing in excess of $10,000, then after an unsuccessful attempt to reach an agreement with the United States and Summit Community Bank to incur and pay for such expense, they may move the Court for permission to incur and pay for such expense.

12. **Power to Borrow** − The officers, directors, managers, and employees of Maples and WVHI shall have the power and authority to utilize existing borrowing or credit agreements or facilities to which Maples and WVHI are borrowers or debtors in accordance with their terms and conditions to pay only ordinary and necessary expenses and obligations of Maples and WVHI, but for no other purposes, and any transactions thereunder shall be the transactions of Maples or WVHI as the case may be. If additional borrowing or credit agreements or facilities are needed for Maples and/or WVHI to pay their ordinary and

necessary expenses, the officers and directors of Maples and/or WVHI shall have the power and authority to negotiate and consummate additional or replacement borrowing and credit agreements or facilities for Maples and/or WVHI in order to pay their ordinary and necessary expenses, but for no other purposes, provided that they are under commercially reasonable terms, and provided that the United States is notified and has no objection (or any objection is overruled by this Court). Under no circumstances shall the officers or directors of Maples and/or WVHI have authority to encumber any of the assets without the approval of this Court.

13. **Medicaid and Medicare Numbers** − The Receiver shall have access to Maples' and WVHI's provider numbers under Medicare and Medicaid to the extent necessary to perform his duties and responsibilities under this Order.

14. **Monthly Reports** − The Receiver shall prepare, on a monthly basis, commencing no later than thirty (30) days after his appointment, a report describing the work that he has performed to fulfill his duties and responsibilities under this Order, the dates that he performed work to fulfill his duties and responsibilities under this Order, a description of the work performed for each date. The reports shall contain sufficient detail for the parties and the Court to be able to evaluate the efforts of the Receiver to market and sell the stock and/or assets of Maples and WVHI. The Receiver shall file the monthly reports with the Court and serve a copy of this report on the attorneys of record for the parties and on any parties appearing pro se, either electronically (by email) or my mail at their preference. The Receiver shall mail or hand deliver the reports to the Office of the Clerk, Joseph P. Kinneary U.S. Courthouse, Room 121, 85 Marconi Boulevard, Columbus, Ohio 43215.

15. **Compensation of Receiver** − The Receiver shall be paid a commission of 4.5-percent (4.5%) of the gross proceeds of the sale of the stock and/or assets of Maples and WVHI after the Court enters an order confirming the sale and the Receiver has completed the process of delivering possession and title to the stock and/or assets to the purchaser. The Receiver shall receive no other compensation for his services or the services of any assistants, colleagues, associates, representatives, or delegates that assist him in performing his duties and responsibilities under this Order. The Receiver shall receive no reimbursement for his expenses and the expenses of any assistants, colleagues, associates, representatives, or delegates that assist him in performing his duties and responsibilities under this Order. The Receiver shall pay any buyer broker commissions from the commission that he receives under this Order.

16. **Contracts** − The directors, officers, and employees of Maples and WVHI remain authorized to negotiate, execute, make, enter into, renew, extend, or modify contracts or agreements affecting any part or all of Maples and/or WVHI or the ordinary business operations thereof including, without limitation, any and all resident agreements, and to terminate any existing contract, agreement, or instrument, to the extent that they are necessary and beneficial to the ongoing and safe present operation of Maples and/or WVHI and required to comply with applicable law and regulations. The foregoing authority shall not extend to extraordinary transactions without the consent of the United States. Mr. Scherer, Mr. Holmes, their counsel and associates and/or any person or entities in active concert with them, and the directors, officers, and employees of Maples and WVHI are prohibited from negotiating, executing, making, and entering into contracts or agreements for the purpose of expanding or adding onto the facility or structure of Maples and/or

WVHI. Within seven (7) days of the entry of this Order, Mr. Scherer, Mr. Holmes, their counsel and associates and/or any person or entities in active concert with them, and the directors, officers, and employees of Maples and WVHI shall inform the Receiver of any option and/or ongoing negotiations of Maples and/or WVHI to acquire additional land, certificates of need, or zoning changes, and they shall assist the Receiver to the extent that the Receiver, in consultation with counsel for the United States, determines that it would preserve or increase the value of Maples and/or WVHI to continue to maintain or continue to pursue them.

17. **Repairs, Maintenance, and Improvements** − The directors, officers, and employees of Maples and WVHI are required and authorized to make all necessary and proper maintenance, repairs, replacements, additions, or improvements to Maples and WVHI appropriate to the orderly and efficient management and operation of them, provided, however, in the event the anticipated cost of any maintenance of a capital nature or of any repairs, replacements, additions, or improvements on a per item or per incident basis exceeds the sum of Ten Thousand and 00/100 Dollars ($10,000.00), they shall first attempt to reach an agreement with the United States and the Summit Community Bank to proceed with them. If an agreement cannot be reached, they may, upon notice to counsel for the parties and to any party appearing pro se, move the Court for an order of approval prior to undertaking or authorizing such maintenance, repair, replacement, addition, or improvement. In order to conserve the funds of Maples and WVHI, the directors, officers, and employees of Maples and WVHI may ask counsel for the United States to file a motion seeking an order of approval of any expenditure for maintenance of a capital nature or of any repairs, replacements, additions, or improvements on a per item or per incident basis

that exceeds the sum of Ten Thousand and 00/100 Dollars ($10,000.00), and the United States may make the motion if it and the bank agree to it.

18. **Marketing and Sale of Maples' and WVHI's Stock and/or Assets** − The Receiver shall perform on behalf of Maples and/or WVHI any and all actions necessary to consent to and effectuate the marketing and sale of their stock and/or assets, whichever will produce the most net proceeds of sale. In effectuating the sale of the stock and/or assets of Maples and WVHI, the Receiver shall have the authority and power necessary to perform the task, and he may authorize an officer or employee of Maples and/or WVHI or a designee, contractor, or company that he hires and pays to exercise them, which shall include, but are not limited to: (a) surrendering or transferring any licenses to operate an assisted living care or skilled nursing home facility; (b) making any and all filings or communications necessary to execute and complete the sale(s); (c) responding to any notice of omissions or additional requests made by any applicable governing agency in West Virginia or Ohio in relation to the sale(s) or otherwise related to licensure of Maples and/or WVHI; (d) taking possession of all personal property and/or assets of the residents of Maples that are in the possession of Maples, and either transferring such personal property to the residents or, if the residents would prefer, to the new owner of Maples; (e) negotiating and entering into any transfer agreement required by West Virginia and/or Ohio for the sale(s), including, but not limited to, a transfer agreement such as a bill of sale; (f) initiating, authorizing the completion of, and/or participating in any and all inspections and evaluations necessary for the proper operation of the Maples and/or WVHI as necessary to prepare for or complete the sale(s); (g) cooperating with and providing necessary information to the intended new owner or operator of Maples and/or WVHI as necessary for the new owner or operator to

22

complete any applications, forms and submissions necessary for the sale(s); and (h) exercising any other right, or fulfill any other obligation, granted to, or placed on, Maples and/or WVHI necessarily to effectuate the sale. For the purpose of the marketing and sale of the stock and/or assets of Maples and WVHI, any forms, documents, consents, or other information or materials filed with West Virginia and/or Ohio by the Receiver or his designee shall have the same force and effect as if filed by Maples and/or WVHI, as licensees/operators of an assisted living care and skilled nursing home facility.

19. **Retention Agreements** − Notwithstanding that the Receiver is not an operating receiver, the Receiver shall have the power and authority to authorize retention bonuses or raises to particular directors, managers, or other employees whose service he determines to be extremely important to the continued safe and effective operation of Maples and/or WVHI while the receivership is in effect. The Receiver shall not authorize a retention bonus or raise before consulting with counsel for the United States and making sure that Maples and/or WVHI have sufficient disposable income and/or assets with which to pay the retention bonus or raise under consideration or that the United States is willing to allow the bonus to be paid from the proceeds of the sale of the stock and/or assets of Maples and/or WVHI ahead of the claims of the United States (although after the claims of Summit Community Bank). If the United States approves of a proposed retention bonus or raise, the Receiver shall propose the same to Maples or WVHI as the case may be and, unless they object, the proposal may be effectuated without further order of the Court, notwithstanding any contrary language in the Preliminary Injunction. Maples and WVHI may file an objection with this Court to contest any retention raise or bonus that the Receiver proposes to pay from operating income (as opposed to being paid from the

proceeds of a sale if one occurs, which only the United States is required to consent to), and, if an objection is filed, the bonus or raise may not be given unless the Court rejects the objection.

20. **Insurance** − The directors, officers, and employees of Maples and WVHI shall make sure that adequate insurance for the assets and potential liabilities of Maples and/or WVHI is maintained to the same extent and in the same manner as it has been insured and increase it as necessary to meet commercially reasonable standards and the law. Within ten (10) days of the entry of this order, the directors, officers, and employees of Maples shall make the Maples the beneficiary of all policies taken out with respect to it, except directors & officers policies and the directors, officers, and employees of WVHI shall make the WVHI the beneficiary of all policies taken out with respect to it, except directors & officers policies. The beneficiaries of all directors & officers policies shall remain the same, except that the Receiver is hereby authorized to cause himself to be named as an additional insured on any directors & officers liability insurance policy of the Maples and/or WVHI, and Maples and/or WVHI shall cooperate in assuring this is done and shall pay for any increase in premium caused thereby.

21. **Earnings and Surplus Funds** − All income and earnings not needed for the ordinary and necessary expenses of Maples and WVHI shall be held in accounts at one or more respected financial institutions until further order of this Court. If there is an emergency need for such income and earnings, the Receiver, director, officers, and/or employees of the Maples and/or WVHI may file a motion with the Court for permission to use them for a specified purpose, except that if the Receiver recommends an expenditure that is approved by the United States, no further order is required.

22. **Rights of United States and Summit Community Bank as Creditors** − Nothing contained in this Order shall constitute or be deemed to constitute any waiver, release, modification, subordination or impairment of any kind of any of the rights, powers and remedies of the United States and/or Summit Community Bank under any agreements or contracts with Maples and/or WVHI or under any applicable law, all of which rights, powers, and remedies remain in full force and effect.

23. **Protections for the Receiver with Respect to Obligations of Maples and WVHI** − The Receiver, his agents, accountants, and attorneys shall have no personal liability in connection with any liabilities, obligations, liens, or amount owed to any of the parties and to any of Maples' and/or WVHI's creditors, because of his duties as Receiver. Nothing in this Order shall grant any rights to trade creditors or general unsecured creditors, whose rights shall be solely determined in accordance with applicable law.

24. **Protections for the Receiver with Respect to Performance** − No obligation incurred by the Receiver in the good faith performance of his duties in accordance with the orders of this Court, whether pursuant to any contract he enters into on behalf of Maples and/or WVHI, by reason of any tort, or otherwise, shall be Receiver's personal obligation or the personal obligation of his principals or agents, except in a case where the Receiver has acted outside the scope of the receivership authority, or committed fraud or intentionally misrepresented the Receiver's ministerial authority as the Receiver, or acted with gross negligence.

25. **Receiver Protection** − The Receiver shall have no personal liability to Maples, WVHI, Mr. Scherer, Mr. Holmes, or any trust of which Mr. Holmes is the trustee, except if the Receiver has acted outside the scope of the receivership authority, or committed fraud or

acted with gross negligence. No suit or other claim or complaint of any kind shall be lodged against the Receiver in any other court or with any other governmental, quasi-governmental, regulatory, or licensing authority without prior approval of this Court on motion for leave to lodge such a complaint. If any claim is asserted against the Receiver personally in this Court (as opposed to the receivership estate), and the Receiver retains counsel to defend and prevails, the person filing any such claim shall be required to pay the Receiver's attorney's fees.

26. **Power of Receiver or the United States to Seek Enforcement of this Order** – In the event a Party or their counsel or associates violates a material provision of this Order, the Receiver or the United States may petition the Court to issue an Order to Show Cause why such party should not be found to be in contempt. All parties, their counsel, and their associates are hereby directed to comply with this Order and any lawful instructions of the Receiver made pursuant to the authority granted herein.

27. **Requesting Guidance from the Court** – The Receiver is authorized, if necessary or appropriate, to request instructions from the Court on an expedited basis regarding any matters that are not anticipated by the authority provided the Receiver as set forth in this Order. The Receiver shall make any requests for instructions from the Court by motion in writing filed in this Court and shall simultaneously serve the request on the parties or counsel for all parties to this action. Notwithstanding the foregoing, the Court intends this Order to be broadly construed to provide the Receiver with the power and authority necessary and appropriate to fulfill her duties as set forth herein and under applicable law.

28. **Bankruptcy** – Mr. Scherer, Mr. Holmes, their counsel and associates and/or any person or entities in active concert with them, and the directors, officers, employees and their

counsel shall not file or cause to be filed a petition for relief under the Bankruptcy Code for Maples and/or WVHI without first obtaining the approval of this Court after notice and a hearing.

H. **Terms and Conditions of Marketing and Sale** − The terms and conditions of the marketing and sale of the stock and/or assets of Maples and WVHI shall be as follows:

1. **Advertising** − The Receiver shall advertise Maples and WVHI as senior living facility operating companies and holding companies. The Receiver shall prepare a prospectus and/or offering materials as typically are used to market and sell senior living facilities. The Receiver shall use his knowledge, skills, and experience in the sale of senior living facilities to identify and directly contact possible interested buyers and provide them with information suitable for them to consider purchasing the stock and/or assets of Maples and WVHI.

2. **One Closing** − The Receiver may not sell the stock and/or assets of Maples or WVHI without simultaneously selling the stock and/or assets of the other in one transaction or in related transactions that are to close at the same closing.

3. **Purchase Agreement** − The Receiver shall strive to obtain a purchase agreement for the stock and/or assets of Maples and WVHI. In general, a purchase agreement for the stock or assets of Maples and/or WVHI should be on typical and commercially reasonable terms for the sale of senior living facility operating or holding companies and their assets. The purchase agreement shall require a deposit sufficient in amount to increase the likelihood that the purchaser shall complete the sale and, at the same time, not be so large in amount as to deter a prospective purchaser from entering into a purchase agreement. The

Receiver may consult with counsel for the United States and/or Summit Community Bank about the terms of a purchase agreement.

4. **Due Diligence Period** − The purchase agreement shall provide a commercially reasonable period of time, which is referred to herein as a due diligence period, for: (a) the buyer to investigate any contingencies identified in the purchase agreement; (b) WVHI and/or Maples to address and/or resolve any such contingencies; (c) the buyer to make inspections; (d) the buyer to obtain any required equity financing and obtain approval of any required credit financing; (e) the buyer and/or the buyer's lender to obtain title reports and perform any other public records searches regarding the assets of Maples and/or WVHI and, if title insurance is desired or required, confirmation that a title insurer will supply a title insurance policy; and (f) any other tasks typically performed during a due diligence period occurring between the execution of a purchase agreement and the closing of a sale in connection with the sale of the stock and/or assets of a corporation that owns or a corporation that operates a nursing home and assisted living care facility. If the buyer or the buyer's lender learn during the due diligence period of a financing statement, security interest, mechanics lien, judgment lien, other type of lien or any other encumbrance on the stock and/or assets of Maples and/or WVHI held by a person that is not already a party to this case, they shall bring it to the attention of the Receiver, who shall bring it to the attention of the parties to the case. The Receiver and the buyer may negotiate an adjustment to the purchase price for the buyer to take the stock and/or assets subject to the encumbrance or the United States may file a motion for leave to amend the complaint to name as a party the holder of the lien or other encumbrance, or a motion to show cause, so that the interest may be adjudicated and the holder accorded whatever share of the sale

proceeds to which they are entitled under the law and so that the stock and/or assets may be sold free and clear of all right, title, lien, claim or interest of such added party. To the extent such a motion is necessary, it may be necessary for the Receiver and the buyer to amend the purchase agreement to provide longer periods for completing due diligence, closing the sale, or other time periods in the agreement.

5. **Motion for Approval of Sale** − After the Receiver obtains a purchase agreement or purchase agreements for the sale of the stock or assets of Maples and of WVHI, he shall provide it to counsel for the United States for review. If counsel for the United States does not object to the agreement(s), the United States shall submit the purchase agreement(s) to the Court with a Motion for Approval of Sale(s). The parties other than the United States then shall have fourteen (14) days from the date of filing of the motion for approval of sale(s) to file an objection to it. If the United States objects to a sale that the Receiver nevertheless wants to submit it to the Court for approval, the Receiver may file a motion for approval of sale(s), and all parties, including the United States, shall have fourteen (14) days from the date of filing of the motion for approval to file an objection to it. The Receiver may consult with any parties regarding the appropriateness of any purchase offer before deciding whether to accept the same, subject to Court approval. After the Court has issued an order approving a purchase agreement, any changes to the terms of the purchase agreement that the Receiver and buyer may thereafter negotiate to its terms also must be approved by an order of the Court. In the event of a renegotiated purchase agreement, the Receiver shall provide it to counsel for the United States for review. If counsel for the United States does not object to the renegotiated agreement, the United States shall submit it to the Court with a Motion for Approval of Revised Purchase Agreement. The parties

other than the United States then shall have fourteen (14) days from the date of filing of the motion for approval of sale(s) as modified to file an objection to it. If the United States objects to the renegotiated purchase agreement and the Receiver nevertheless wants to submit it to the Court for approval, the Receiver may file a motion for approval of sale(s), and all parties, including the United States, shall have fourteen (14) days from the date of filing of the motion for approval to file an objection to it. The Receiver may consult with any parties regarding the appropriateness of any revised purchase agreement before deciding whether to accept the same subject to Court approval.

6. **Closing** – If the Court grants a motion for approval of sale(s), the sale(s) may go to a closing. At the closing, all things that typically occur, are carried out, are paid, are exchanged and/or are provided shall occur, be carried out, be paid, be exchanged and/or be provided, except that the net proceeds of sale (meaning the proceeds remaining after paying the costs of sale at closing and that typically are distributed to creditors holding liens against the stock and/or assets of a business) shall not be disbursed at closing and instead the Receiver shall hold them in escrow in an account that he shall open for this purpose at a well-known and respected federally insured financial institution, and he shall await an order of this Court instructing him as to how to disburse them.

7. **Order of Distribution of Net Proceeds of Sale** – After the closing, the United States shall file a motion for an Order of Distribution of Net Proceeds of Sale, wherein it explains how much of the net proceeds held in escrow by the Receiver should be distributed to Defendant Summit Community Bank, as first lienholder, to Plaintiff United States of America, and, if applicable, to any other person or entity, in their respective order of lien priority under applicable law. In the event of a dispute that will likely delay final

distribution, the Court will direct the Receiver to deposit the proceeds into the registry of the Court

8. **Disbursement of Net Proceeds of Sale** − After the Court enters an Order of Distribution of Net Proceeds of Sale, the Receiver shall disburse the net proceeds in accordance with the Order (or the Clerk will do so if the proceeds have been deposited in the registry of the Court).

9. **Sale Free and Clear of All Rights, Title, Liens, Claims or Interests of Parties to this Action** − In a sale of the stock and/or assets of Maples and/or WVHI pursuant to this order, all rights, title, liens, claims, or interests of the parties to this action shall attach to the proceeds of sale, but otherwise be extinguished in the stock and/or assets of the Maples and/or WVHI that are sold, and the purchaser shall take the stock and/or assets purchased free and clear of any and all rights, title, liens, claims or interests of the parties to this action.

10. **Certificates of Stock** − After any sale of the stock of Maples and/or WVHI has been approved by the Court, Summit Community Bank shall deliver all certificates of the stock to be sold that are in its possession and control to the Receiver at closing and the Receiver shall hold all certificates in escrow until closing is complete and deliver the certificates to the purchaser at the closing and shall be authorized by the approval order to indorse the certificates on behalf of Ronald E. Scherer, if necessary. The control, priority and perfection of Summit Community Bank's lien shall not be effected by Summit Community Bank's delivery of the certificates to the Receiver and possession of the certificates by the Receiver shall be considered to be in trust for Summit Community Bank until closing is complete. The directors, officers, employees, and counsel of Maples and WVHI shall

cooperate and assist the Receiver in fulfilling this provision, including, if necessary, preparing new certificates of stock in Maples and WVHI and/or making all necessary entries in the corporate records of Maples and/or WVHI to reflect that the purchaser is the owner of the stock purchased. This provision contemplates that, shortly after the sale, a motion for order of distribution will be filed that will request that Summit Community Bank receive payment from the net proceeds of sale of the stock and any assets of Maples and/or WVHI that also are being sold of the full amount owed on its loans to Maples and/or WVHI.

11. **Forfeited Deposit** − If the purchaser fails to follow through on the purchase of stock and/or assets of Maples and/or WVHI for which the Court has entered an order approving the sale, the deposit made by the purchaser shall be forfeited, the certificates shall be returned to Summit Community Bank, and the Receiver shall re-advertise and resell the stock and/or assets of Maples and WVHI. The Receiver shall hold any forfeited deposit until the stock and/or assets of Maples and WVHI are sold to another purchaser, and they shall be added to the purchase price paid by the subsequent purchaser and distributed as part of the proceeds of the subsequent sale. The Receiver's 4.5% commission as compensation thus shall also apply to any forfeited deposits.

I. **Duty to Preserve Maples, WVHI, and their Assets** − Until the stock and/or assets of Maples and WVHI are sold, Mr. Scherer, Mr. Holmes, their counsel and associates, and the directors, officers, and employees of those entities and the assisted living care and nursing home business that is operated by Maples in the facility and real property owned by WVHI shall take all reasonable steps necessary to preserve the business and the assets, real and personal, of Maples and WVHI in its current condition including, without limitation, maintaining fire and casualty

insurance policies on the real property for the full amount of their fair market value, maintaining a Director and Officer liability insurance policy, and maintaining such other insurance that typically is maintained by or for businesses owning and/or operating assisted living and skilled nursing home facilities. They shall not commit waste against the real property, nor shall they cause or permit anyone else to do so. They shall not record any instruments, publish any notice, or take any action (such as running newspaper advertisements) that may directly or indirectly: (1) encumber the assets or stock of Maples and/or WVHI; (2) place a cloud of uncertainty as to the owner of title to the assets of Maples and/or WVHI; (3) tend to affect adversely the value of the real or personal property of Maples and/or WVHI; or (4) tend to deter or discourage potential or prospective buyers from pursing a purchase of the stock and/or assets of Maples and WVHI.

J. **Cooperation of, and Non-Interference by, Existing Owner, Management, Associates, and Staff** – Maples, WVHI, and their current officers, directors, members, employees, partners, trustees, agents, representatives, Mr. Scherer, Mr. Holmes, and/or any entity controlled by Mr. Scherer or Mr. Holmes, and/or any entity managing Maples and/or WVHI at the direction or on behalf of Mr. Scherer or Mr. Holmes, and/or any person or entities in active concert with Mr. Scherer and/or Mr. Holmes are ordered to fully cooperate with the Receiver and to refrain from interfering with the Receiver in the performance of his duties or exercising his authority and powers under this Order. They are precluded from: (a) removing, destroying, or depleting any assets owned by or relating to Maples and/or WVHI; (b) terminating, or causing to be terminated, any license, permit, lease, insurance policy, contract, or agreement owned by or relating to Maples and/or WVHI, without approval of the Court; and (c) concealing or destroying any of Maples' and/or WVHI's books and records, deleting any information from computers or computer records or databases showing information or data of Maples and/or WVHI, or taking any other action to

destroy or remove materials or information concerning Maples and/or WVHI. Mr. Scherer, Mr. Holmes, their counsel and associates, and/or any person or entities in active concert with them are further ordered to, immediately upon demand, provide the Receiver with any and all tools, keys, materials or information necessary to access any safes, safety deposit boxes, file cabinets, closets, storage units, computers, computer records or databases, email, or other electronic data relating to Maples and/or WVHI, including but not limited to keys, codes, and login and password information. Any failure by Mr. Scherer, Mr. Holmes, their counsel and associates, and/or any person or entities in active concert with them to comply with the terms and conditions of this Order shall render them in contempt of this Order and subject to sanctions by this Court.

K. **Notification of Violation of the Terms and Conditions of this Order** − The Receiver, the directors, officers, and employees of the assisted living care and nursing home business that is operated by Maples in the facility and real property owned by WVHI, and the directors, officers, and employees of WVHI shall notify counsel for the United States immediately of any instance in which Mr. Scherer, Mr. Holmes, their counsel and/or associates instruct them or anyone else or suggest to them or anyone else that they take any action or fail to take any action so as to: (1) impair or impede the Receiver in performing duties and responsibilities or exercising his power and authority under this Order; and/or (2) hide, destroy, or fail to disclose to the Receiver and/or the United States any evidence of any distributions since January 1, 2017, of funds or assets of Maples and/or WVHI to Mr. Scherer, Mr. Holmes, a trust in which Mr. Scherer is a beneficiary, or a business in which Mr. Scherer owns an interest directly or indirectly or from which he earns any compensation.

L. **Notification of Change of Upper Level Management of Maples and WVHI** − Mr. Scherer, Mr. Holmes and/or existing management of Maples and WVHI shall notify the Receiver,

who shall notify counsel for the United States and counsel for Summit Community Bank, of any change of the officers, directors, and administrators of Maples and WVHI.

M. **Motions for Modification of this Order** − If circumstances warrant it, the parties or the Receiver may move the Court for modifications of the terms of this Order.

## IV. CONCLUSION

For the reasons articulated above, the Court **GRANTS** the Government's Motion to Appoint Receiver [#139]. The Court **APPOINTS** Watson McCollister, of and in association with, Senturian Senior Housing Brokerage (1017 17th Avenue S., Nashville, Tennessee 37212, Phone: (615) 707-9455, Fax: (615) 250-0505, Email: mccollister@senturian.net) as Receiver.

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: April 5, 2021**