IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | Case No. 2:19-cv-03634 |
| | : | |
| v. | : | Chief Judge Algenon L. Marbley |
| | : | |
| RONALD E. SCHERER, *et al.*, | : | Magistrate Judge Kimberly A. Jolson |
| | : | |
| Defendants. | : | |

## OPINION & ORDER

This matter is before the Court on multiple motions from both parties. Defendant Ronald
E. Scherer has filed a Seriatim Motion to Hold U.S. Attorney Alan Shapiro and the Special Purpose
Receiver in Contempt and to Sanction U.S. Attorney Shapiro (ECF No. 206), a Motion to Amend
(ECF No. 210), and a Motion to Compel (ECF No. 212). Plaintiff has filed a Motion for Order
Authorizing Receiver to Incur Additional Attorney Service Expenses (ECF No. 219) and cross-
motions to declare Scherer a vexatious litigator (ECF No. 213). For the reasons set forth below,
Scherer's motions (ECF Nos. 210 and 212) are **DENIED** and his initial motion to hold in contempt
and for sanctions (ECF No. 206) is **DENIED AS MOOT**. The Government's cross-motion (ECF
No. 213) is **GRANTED**. Finally, the Government's motion to incur additional expenses (ECF
No. 219) is **GRANTED**.

## I.    BACKGROUND

### A.    Factual Background

This case arises from efforts by the United States Government (the "Government") to
recover unpaid federal taxes from Defendant Scherer. (*See* ECF No. 170 at 1). A recitation of the

1

factual background of this case was previously set out in this Court's July 6, 2021, Opinion and Order (ECF No. 175).  The motions currently before the Court do not add to the record.  (*See* ECF Nos. 206, 210, 212, 213, 219).  Thus, this Court adopts the factual background as set out in its previous Order (ECF No. 175).

To summarize briefly, the Government is seeking to enforce its federal tax liens on Defendant Scherer's stock in Maples Health Care, Inc. ("Maples"), and West Virginia Health Care, Inc. ("WVHI"), in order to recover unpaid federal income taxes.  (*See* ECF No. 175 at 1–3).  In April 2021, this Court granted the Government's motion to appoint a receiver for the limited purpose of marketing and selling the stock and/or assets of Maples and WVHI.  (*See generally* ECF No. 170).  Since then, Scherer has filed various motions, all effectively asking for reconsideration of this Court's previous decisions.  These include a Motion for Reconsideration of this Court's Order denying a previous motion for reconsideration (ECF No. 177), which was also denied.  (*See* ECF No. 195).  Defendant Scherer next appealed this Court's denial of his motion requesting recusal of Chief Judge Algenon L. Marbley to the Sixth Circuit Court of Appeals (ECF No. 197).  The Court of Appeals dismissed that petition earlier this year.  (ECF No. 209).

### B.    Procedural Background

On June 20, 2022, Defendant Scherer filed his Motion to Hold U.S. Attorney Alan Shapiro and the Special Purpose Receiver in Contempt of Court and to Sanction U.S. Attorney Alan Shapiro (ECF No. 206).  In that motion, he alleges that the U.S. Attorney representing the Government in this case and the Receiver appointed by this Court have failed to follow this Court's April 5, 2021, Opinion & Order (ECF No. 170), which set out the procedures and conditions for the sale of Maples and WVHI.  Scherer subsequently filed a corrected version of that motion (ECF

No. 210) to comply with Local Rule 5.1(c).[1]  In response, the Government opposed Scherer's motion and additionally filed a cross-motion asking this Court to issue an order requiring Scherer to obtain leave of court before filing further motions.  (ECF No. 213).  Scherer has also filed a Motion to Compel (ECF No. 212), requesting that this Court require the Government and the Receiver to disclose certain information, as allegedly required by this Court's Order (ECF No. 170).  Finally, the Government has requested that this Court authorize the Receiver to incur additional attorney's fees related to legal services for the sale of Maples and WVHI, to be paid from the gross proceeds of the sale.  (ECF No. 219).  All motions are now ripe.

## II.     STANDARD OF REVIEW

The Sixth Circuit has determined that the "rights of pro se litigants require careful protection where highly technical requirements are involved, especially when enforcing those requirements might result in a loss of the opportunity to prosecute or defend a lawsuit on the merits." *Brown v. Matauszak*, 415 F. App'x 608, 616 (6th Cir. 2011) (citing *Garaux v. Pulley*, 739 F.2d 437, 439 (9th Cir. 1984)).  Accordingly, the pleadings of pro se litigants are held to "'less stringent standards than formal pleadings drafted by lawyers,' and therefore should be liberally construed." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)).  A plaintiff's status as a pro se litigant does not, however, allow her to escape the "basic pleading essentials." *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989) (citations omitted).  Among such essentials are the obligations under Federal Rule of Civil

---

[1] Scherer's August 26, 2022, motion (ECF No. 210) is labeled on the docket as a Motion to Amend/Correct, but has the same title as his June 24, 2022, motion (ECF No. 206).  After the filing of the first motion, the Clerk's Office notified Scherer that ECF No. 206 did not comply with Local Rule 5.1(c) and requested re-submission of the motion.  Pursuant to the liberal construction afforded to *pro se* plaintiffs, this Court construes ECF No. 210 not as a motion to amend, but as an Amended Motion to Hold in Contempt / for Sanctions.  Accordingly, the analysis below focuses on Scherer's requests as stated in ECF No. 210 and does not evaluate ECF No. 206 on the merits.  The two motions contain the same information and arguments.

Procedure 8(a) to provide "a short and plain statement of the claim showing that the pleader is entitled to relief."

### III.    LAW & ANALYSIS

### A.    Amended Motion to Hold in Contempt and for Sanctions

#### 1.    Contempt

Defendant Scherer moves the Court to hold counsel for the Government and the Receiver in contempt of court for failing to follow this Court's previous Order (ECF No. 170).  Contempt proceedings are one way in which courts can seek "to enforce the message that court orders and judgments are to be taken seriously." *Elec. Workers Pension Trust Fund of Loc. Union #58, IBEW v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 385 (6th Cir. 2003) (citing *NLRB v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 590 (6th Cir. 1987)).  Although courts should wield the contempt power with caution, it is, without doubt, "a necessary and integral part of the independence of the judiciary, and is absolutely essential to the performance of the duties imposed on them by law.  Without it they are mere boards of arbitration, whose judgments and decrees would be only advisory." *Id.* at 378 (quoting *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 450 (1911)).  Whether sanctions are warranted — and what form they take — are subject to the trial court's discretion. *Id.* (citing *Peppers v. Barry*, 873 F.2d 967, 968 (6th Cir. 1989)); *see also* 11A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2960, at 372–73 (2d ed. 1995).  Typically, litigants may be held in contempt if there is "clear and convincing evidence that 'he violate[d] a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order.'" *Cincinnati Bronze*, 829 F.2d at 591 (quoting *SEC v. First Fin. Grp. of Texas, Inc.*, 659 F.2d 660, 669 (5th Cir. 1981) (alteration in original)).

4

In the present case, Scherer has alleged that counsel for the Government and the Receiver have failed to comply with this Court's previous Order in four different ways.  He contends that: (1) the Receiver has not properly arranged or paid for the $500,000 receiver bond (ECF No. 210 at 1); (2) the Receiver has not properly filed status reports but rather has given those reports to U.S. Attorney Shapiro, who has in turn filed the reports with the Court (*id.* at 2); (3) the Receiver and U.S. Attorney Shapiro have failed to provide Defendant Scherer and Trustee Holmes with the confidentiality / NDA agreements used by the Receiver (*id.* at 3); and (4) the Receiver and the U.S. Attorney have withheld their appraisal of the relevant properties from Defendant Scherer and Trustee Holmes, and that the appraisal was hastily conducted.  (*Id.* at 4–5).

With respect to Scherer's first contention, this Court's previous order required the Receiver "to maintain a $500,000 receiver bond during the pendency of the Receivership."  (ECF No. 170 at 17, Part G ¶ 7).  While it is true that the Receiver failed to purchase a bond immediately after he was appointed (*see* ECF No. 191-2, Declaration of Watson McCollister, ¶ 7), he later did so. (*Id.* ¶ 10).  Evidence of that bond was provided to the Court.  (ECF No. 191-3).  Scherer has not pointed out any specific deficiencies or improprieties with the bond that has been filed in the docket.  As the Receiver has acknowledged, apologized for, and rectified his initial mistake, and as the Court is satisfied that the receiver bond has been properly arranged and paid for, this Court finds that Scherer's first basis for contempt has no merit.

Second, Scherer suggests that the Receiver's status reports have not been filed directly by the Receiver with this Court; instead, the status reports have been filed by counsel for the Government, which, according to Scherer, raises concerns that the U.S. Attorney may have "changed, removed, or added to the Special Purpose Receiver's reports prior to filing them."  (ECF No. 210 at 2).  Additionally, Scherer argues that the status reports are "void of vital information

5

describing efforts, details of the sale process, including issues required to be complied with in a specific order as defined by the Court Order." (*Id.*).  The Government explains that, as the Receiver is not an attorney, has no experience drafting legal documents, does not have ECF filing privileges, and serves a limited role in this case, the procedure used for filing status reports is appropriate.  (ECF No. 213 at 1–2; ECF No. 191 at 7–9).  This Court agrees with the propriety of the procedure.  There are no indications that the U.S. Attorney has changed, removed, or added to the reports, which are signed by the Receiver under penalty of perjury.  (*See, e.g.*, ECF No. 216-1 ¶ 6; ECF No. 224-1 at 2).

Further, this Court's previous Order (ECF No. 170) required the Receiver's status reports to "describ[e] the work that he has performed to fulfill his duties and responsibilities under this Order, the dates that he performed work to fulfill his duties and responsibilities under this Order, a description of the work performed for each date" and "contain sufficient detail for the parties and the Court to be able to evaluate the efforts of the Receiver to market and sell the stock and/or assets of Maples and WVHI." (*Id.* at 19, Part G ¶ 14).  Contrary to Scherer's assertions, the status reports submitted by the Receiver have in fact complied with these requirements.  The Receiver's report for August 2022, for example, includes details about his work and discussions with Julie Scherer, third-party service providers, attorneys, and prospective buyers, all with dates listed. (ECF No. 220-1 ¶¶ 1–5).  The report for July 2022, to provide another example, discusses conversations with attorneys, insurance brokers, and a prospective operator of the facility, again with dates listed.  (ECF No. 216-1 ¶¶ 1–4).  This information is precisely what is required by this Court's previous Order (ECF No. 170); as such, contempt proceedings are not warranted on the basis of insufficient information in the Receiver's status reports.

The real animating force behind Scherer's issues with the Receiver's status reports appears to be the fact that he has not been provided with the confidentiality agreement used by the Receiver, information about the potential buyer deposit, or the appraisal ordered by the Government. (ECF No. 210 at 3–4). Scherer suggests that the withholding of these documents is "clearly in contempt of the court's instructions," prevents Trustee Holmes and himself from making a proper objection to the value of any sale contract obtained by the Receiver, and is "seriously detrimental to the wellbeing of the entities, employees, residents and rights of Pro Se Defendant Scherer and the Trustee Holmes as parties to the order." (*Id.* at 3). This Court first notes that its previous Order does not require confidentiality agreements, but only "if appropriate." (ECF No. 170 at 14, Part G ¶ 3). Second, the Court's Order requires a deposit in the purchase agreement, but does not require information about the deposit to be disclosed prior to the Receiver obtaining a purchase agreement and the Government submitting that agreement to this Court for approval. (*Id.* at 27–29, Part H ¶¶ 3, 5). Instead, the propriety of the deposit will be evaluated by this Court if and when an objection to the motion for approval is filed. Third, the Order does not require the Receiver or the Government to provide its appraisal to the Court or to the other parties for review prior to submitting a motion for approval. (*See generally id.*). That information, too, will be evaluated by this Court upon a proper objection, which Scherer can supplement with an appraisal of his own if he believes that the Government's appraisal inaccurately assesses the value of Maples and WVHI. (*Id.* at 9 (noting that the approval and objection process "bakes in some of the procedural safeguards that the appraisal process under § 2001(b) provides")).

In short, this Court's previous Order (ECF No. 170) does not require that the Receiver disclose the confidentiality agreement, purchaser deposit information, or appraisal in advance of a motion for approval, and Scherer fails to point to any specific provisions in this Court's Order

7

(ECF No. 170) to the contrary;[2] therefore, the withholding of that information does not contravene court orders and does not constitute a basis for contempt proceedings.

Nor does the withholding of any of these documents inhibit Scherer and Holmes's abilities to file an objection to the purchase agreement that the Receiver obtains. Once a motion for approval of sale is filed, Scherer will have fourteen days to file an objection. (ECF No. 170 at 29–30, Part H ¶ 5). Scherer may object, for example, if he believes that the purchase agreement obtained by the Receiver provides too little value for the true worth of the properties or if the deposit is inadequate or otherwise improper. But, in order to do so, Scherer has no need *at present* of the appraisal that the Receiver obtained or the deposit that the Receiver has set; instead, he will be apprised of that information at the time a motion for approval is filed, and can object then.[3] Moreover, this Court's Order provided the Receiver with only a limited role of marketing and selling Maples and WVHI, whereas "[t]he directors, officers, employees, and any contractors of Maples and WVHI shall continue to be responsible for and carry out the operations of Maples and WVHI." (*Id.* at 17, Part G ¶ 8). To the extent that Scherer is concerned with the "wellbeing of the entities, employees, residents" of the facilities (ECF No. 210 at 3), that remains the responsibility of Scherer and his team. Accordingly, this Court finds no reason for holding U.S. Attorney Shapiro or the Receiver in contempt.

---

[2] If Scherer is able to identify specific provisions of this Court's April 5, 2021, Opinion & Order (ECF No. 170) that supports the opposite of this conclusion, this Court is open to considering that information.

[3] Scherer also suggests that the appraisal ordered by the Receiver was too hasty. (ECF No. 210 at 5). The implication, presumably, is that the appraisal undervalued the facilities. If the Government files a motion to approve and Scherer objects for that reason, this Court will consider that objection carefully, impartially, and in accordance with the procedures outlined in its previous Order (ECF No. 170).

2.    *Sanctions*

Scherer asks this Court to impose sanctions on counsel for the Government. He does not provide any legal arguments for why sanctions are warranted; it appears, based on the title of Scherer's motion, that he believes U.S. Attorney Shapiro should be sanctioned for improperly blocking Scherer's requests for discovery and violating his due process rights. (*Id.* at 1).

Federal district courts have at least three sources of authority to impose sanctions. One is rule based (Rule 11), one is statutory (28 U.S.C. § 1927), and the other is the Court's inherent authority. *See Dubuc v. Green Oak Twp.*, 482 F. App'x 128, 132 (6th Cir. 2012) (inherent authority); *Hall v. Liberty Life Assur. Co. of Bos.*, 595 F.3d 270, 275–76 (6th Cir. 2010) (Rule 11 and 28 U.S.C. § 1927). Rule 11 sanctions are typically warranted for frivolous or improper pleadings, motions, or papers, *see Merritt v. Int'l Ass'n of Machinists & Aerospace Workers*, 613 F.3d 609, 626 (6th Cir. 2010), while § 1927 sanctions are appropriate when an attorney is "unreasonably and vexatiously multiplying the proceedings even in the absence of any 'conscious impropriety,'" *Hall*, 595 F.3d at 275 (quoting *Rentz v. Dynasty Apparel Indus., Inc.*, 556 F.3d 389, 396 (6th Cir. 2009)), and sanctions pursuant to a court's inherent authority may be warranted "when bad faith occurs." *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 512 (6th Cir. 2002) (quoting *Runfola & Assocs. v. Spectrum II, Inc.*, 88 F.3d 368, 375 (6th Cir. 1996)). The Sixth Circuit has held that "[a] district court's decision to grant or deny sanctions, whether arising under either 28 U.S.C. § 1927 or Rule 11 of the Federal Rules of Civil Procedure, is reviewed under the abuse-of-discretion standard." *Hall*, 595 F.3d at 275 (citing *Mich. Div.-Monument Builders of N. Am. v. Mich. Cemetery Ass'n*, 524 F.3d 726, 739 (6th Cir. 2008)). The same standard is used to review a court's decision to "impose sanctions under his inherent authority." *Dubuc*, 482 F. App'x at 132 (citing *Metz v. Unizan Bank*, 655 F.3d 485, 489 (6th Cir.

2011)).  Finally, Federal Rule of Civil Procedure 37(b) also authorizes sanctions for a party's failure to obey an order requiring discovery.

Here, the Court first notes that sanctions are not warranted pursuant to the discovery rules. Scherer cites Rule 26 and Rule 34 in his motion (ECF No. 210 at 6–7),[4] but the Government has not failed to make required disclosures nor has the Government failed to comply with a court order compelling production of documents.  It is true that Scherer had a filed Motion for Discovery (ECF No. 187), which was still pending at the time Scherer submitted the motion under consideration here; but as this Court had not yet ruled on that motion, the Government's failure to disclose documents requested by Scherer was not in violation of any court-issued discovery orders.  *See* Fed R. Civ. P. 37(b)(2)(A).  Additionally, that motion has since been denied by this Court.  (*See* ECF No. 222).

Similarly, sanctions are not warranted pursuant to Rule 11 or § 1927.  At this stage of the litigation, the Government's filings primarily consist of status reports required by court orders or responses in opposition to Scherer's motions.  (*See, e.g.*, ECF Nos. 191, 196).  Nothing about these submissions falls into the category of pleadings, written motions, or other papers that have an improper purpose or are unwarranted by existing law.  *See* Fed. R. Civ. P. 11(b).  Nor do these filings constitute a vexatious multiplication of the proceedings, such that they would warrant § 1927 sanctions.[5]  *See Hall*, 595 F.3d at 275.  The only possible basis for Scherer's request for sanctions, in other words, is under this Court's inherent authority.

---

[4] Sanctions pursuant to Rule 37 cover violations of Rule 26 and Rule 34.  *See* Fed. R. Civ. P. 37(a)(3)(A), (d)(1)(A)(ii).

[5] If anything, it is Scherer who is engaged in unreasonably and vexatiously multiplying the proceedings in this case.  *See infra*, Part III.B.

10

Courts' "inherent powers must be exercised with restraint and discretion," and reserved only for situations where "the conduct of a party or an attorney is egregious." *First Bank of Marietta*, 307 F.3d 501, 516 (6th Cir. 2002) (first quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991); and then quoting *Martin v. Brown*, 63 F.3d 1252, 1265 (3d Cir. 1995)). To determine when sanctions are warranted under a court's inherent powers, the Sixth Circuit has formulated a three-part test, which requires a court to find that "the claims advanced were meritless, that counsel knew or should have known this, and that the motive for filing suit was for an improper purpose such as harassment," before issuing sanctions. *Big Yank Corp. v. Liberty Mut. Fire Ins. Co.*, 125 F.3d 308, 313 (6th Cir. 1997) (quoting *Smith v. Detroit Fed'n of Tchrs. Loc. 231, Am. Fed'n of Tchrs., AFL-CIO*, 829 F.2d 1370, 1375 (6th Cir. 1987)).

Scherer's proposed reasons for imposing sanctions do not fit neatly into the *Big Yank* test. But in keeping with the liberal construction afforded *pro se* litigants, this Court evaluates whether either of Scherer's two contentions — that sanctions are warranted because the Government and the Receiver's actions violate not only this Court's orders but also fundamental principles of due process — qualify as an "improper purpose." (*See* ECF No. 210 at 13–14). As the first argument has already been rejected, *see supra* Part III.A.1, we turn now to the due process allegations. In effect, Scherer contends that his procedural due process rights have been violated because he has "been denied the opportunity to be heard on new evidence that proves fraud on the court in decisions made to remove his property interest" and by the "Special Purpose Receiver ignoring the terms of the original order." (*Id.*). A litigant can establish a procedural due process claim on one of two grounds: "by either (1) demonstrating that he is deprived of property as a result of established state procedure that itself violates due process rights; or (2) by proving that the [other party] deprived him of property pursuant to a 'random and unauthorized act' *and* that available

11

state remedies would not adequately compensate for the loss." *Macene v. MJW, Inc.*, 951 F.2d 700, 706 (6th Cir. 1991) (citing *Collins v. Nagle*, 892 F.2d 489, 497 (6th Cir. 1989)) (emphasis in original). Nothing in this case suggests that Scherer has an argument based on either ground. Scherer asks this Court to reconsider not its decision to appoint a receiver or to attach the tax liens to Maples and WVHI stock, but the original determination of his tax liabilities.[6] (*See* ECF Nos. 210 at 4 ("Court orders that were originally based on false trust accounting as improperly presented by them as covered up by the government in their 2005 settlement agreement."), 11 (arguing that the 2005 Settlement Agreement was "improperly proposed"); 215 at 1, 3). That determination did not occur via a random and unauthorized act, but was the result of extensive litigation — the very definition of a state procedure that adheres to due process rights. (*See* 2:14-cv-00452, ECF No. 193, Opinion & Order). Scherer has also filed more than fifty documents in this case, further indicating that he has had an opportunity to be heard. (*See* 2:19-cv-03634). As there is no indication that Scherer's procedural due process rights have been violated, this Court finds no basis for sanctioning counsel for the Government.

### 3. *Other Matters*

Finally, the remainder of Scherer's motion is dedicated to rehashing arguments already made — and rejected by this Court — in previous stages of this litigation. Scherer reiterates, for example, his allegation of this Court's "evident bias." (*Id.* at 3, 4). He has previously brought repeated allegations of conflicts that would bring this Court's impartiality into question and asked that this judge be disqualified from this case. (*See* ECF Nos. 21, 147). This Court considered —

---

[6] This Court also notes that Scherer complains of not being allowed to relitigate tax liabilities that he himself stipulated to in 2005 and that courts have upheld repeatedly. Scherer does not explain what errors or improprieties led to an improper tax assessment, what fraud was committed by the government, or what his "new evidence" contains, beyond conclusory statements to that end. *See also infra* Part III.A.3 n.9.

12

and rejected — Scherer's arguments both times.  (ECF Nos. 36, 169 at 7–8 (finding Scherer's assertions of personal bias to be purely speculative)).  Scherer also restates his previous allegations that the unpaid tax liabilities underlying this case were the result of fraud by JP Morgan Chase and the U.S. Government.  (ECF No. 210 at 11).  As mentioned, Scherer has already had numerous opportunities to litigate the issue (*see* ECF No. 104 at 4–5) and no intervening change of law,[7] new evidence,[8] or manifest injustice requires reconsideration today.  (*See* ECF No. 175 at 8).

Accordingly, Scherer's Amended Motion to Hold in Contempt and for Sanctions (ECF No. 210) is **DENIED**.  His initial motion to the same effect (ECF No. 206) is **DENIED AS MOOT**.

## B.    Cross-Motion to Label Scherer a Vexatious Litigator

Contemporaneous with its response in opposition to Scherer's Amended Motion to Hold in Contempt, the Government asks this Court to require Scherer obtain leave before filing further motions.  (ECF No. 213 at 5–6).  The Government notes that Scherer has filed over a dozen meritless motions in this case, often repeating the same arguments and seeking the same relief, even where those arguments and requests have already been rejected.  (*See id.* at 5).  This flood of motions, according to the Government, "wastefully and unreasonably consumes the time and resources of the United States and its counsel."  (*Id.*).  In opposition, Scherer suggests that such an

---

[7] Scherer suggests that reconsideration is warranted in light of the decision in Takhar v. Gracefield Devs. Ltd. [2019] UKSC 13, [2017] EWCA (Civ) 147 (Eng.).  (ECF No. 210 at 12–13).  That decision, however, was issued by the UK Supreme Court, not the US Supreme Court; its holdings have no relevance here.  Scherer also suggests repeatedly that this Court has "dismissed [] new legal theories ignoring the doctrine of Void Ab Initio" but does not suggest how that doctrine applies, if at all, to his case.  (*Id.* at 4).

[8] Scherer suggests that he has provided exhibits with "new facts" and evidence about the fraud.  (*See* ECF No. 210 at 4; ECF No. 215 at 2).  His exhibits are exceedingly voluminous, comprising over 5,000 pages, are not searchable in contravention of Local Rule 5.1(c), and do not support his contentions.  (*See, e.g.*, ECF No. 210-6 at 19 (reporting that fraud was perpetrated *against* the IRS and the U.S. Government, not *with* the Government)).  In addition, the exhibits that Scherer does identify in his motion do not correspond with either the numbering in his table of exhibits (ECF No. 210 at 15) or with the exhibits themselves.  Scherer bears the burden of identifying which exhibits and what legal arguments support his contentions; a conclusory assertion is insufficient.  *Cf. Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (noting that, on a motion to dismiss, a court "need not '"accept as true a legal conclusion couched as a factual allegation"'" (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007))).

13

order is inappropriate primarily because it would "remove his rights to due process of law . . . and his right under the constitution to defend himself." (ECF No. 215 at 2).

The Sixth Circuit Court of Appeals has repeatedly upheld the authority of federal district courts to impose prefiling restrictions on vexatious litigators. *See, e.g.*, *Filipas v. Lemons*, 835 F.2d 1145, 1146 (6th Cir. 1987) (citing *Abdullah v. Gatto*, 773 F.2d 487, 488 (2d Cir. 1985) (per curiam); *In re Green*, 669 F.2d 779, 785–86 (D.C. Cir. 1981) (per curiam)); *United States ex rel. Odish*, 843 F. App'x 748, 750 (6th Cir. 2021) ("There is nothing unusual about imposing prefiling restrictions in matters with a history of repetitive or vexatious litigation." (quoting *Feathers v. Chevron U.S.A., Inc.*, 141 F.3d 264, 269 (6th Cir. 1998))). Scherer has filed numerous motions with this Court, each of which repeats the same assertions and requests the same relief; his motions reiterate his allegations of fraud without supporting evidence, seek to relitigate his assessed tax liabilities, repeatedly request the same documents from the Government, and ask Chief Judge Algenon L. Marbley to recuse himself — claims that have been rejected by this Court multiple times. (*See* ECF Nos. 36, 97, 98, 100, 168, 169, 175, 195, 222). Scherer's recent motion (ECF No. 210) includes over 5,000 pages of exhibits, even though the motion itself references only four (4) exhibits, one of which is a previous decision from this Court. (*See* ECF No. 210-1 to -46). The inescapable conclusion is that the vast majority of these 5,000 pages serves no other purpose but to waste the resources of the judiciary.

Finally, it is important to note that requiring Scherer to seek leave of the Court before filing further motions does not mean that he will be unable to defend himself. (*Cf.* ECF No. 215 at 2 (detailing Scherer's concerns that the Government's motion seeks to deprive him of his rights to due process and to defend himself)). Instead, Scherer may still initiate motions, as long as the motion does not repeat arguments that this Court has already rejected and is plausibly supported

14

by specific pieces of evidence; he may also file responses in opposition to the Government's motions without leave. In other words, Scherer retains his due process rights to be heard according to established state procedures.

Accordingly, this Court **GRANTS** the Government's cross-motion (ECF No. 213). Mr. Scherer is **ENJOINED** from filing any further motions without submitting a statement from an attorney licensed to practice in this Court or the State of Ohio certifying that there is a good faith basis for the motion Scherer seeks to file.

### C. Motion to Compel

Defendant Scherer asks this Court to require the Government and the Receiver to provide him and Trustee Holmes with "critical information," which includes: (1) updated tax transcripts for 1990–92; (2) a copy of the receiver bond; (3) a copy of the confidentiality agreement / NDA, with the single identified purchaser; (4) accounting for the deposit; (5) a copy of the appraisal of the properties; and (6) written affirmation from the single identified purchaser certifying that they have satisfied the requirements set out by this Court. (ECF No. 212 at 2). The Government has agreed to provide Scherer with new IRS transcripts for his 1990–92 tax liabilities but opposes the remaining requests. (ECF No. 214 at 2). Additionally, a copy of the bond has already been filed with this Court. (ECF No. 191-3).

This Court construes Defendant Scherer's request as a motion to compel discovery pursuant to Federal Rules of Civil Procedure 37. On notice to other parties and all affected persons, "a party may move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). Notably, "[t]he motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." *Id.* Scherer has not made this certification, nor has he otherwise

15

demonstrated that he has adequately met and conferred in good faith with opposing counsel to try to resolve discovery issues prior to seeking judicial intervention. *O'Malley v. NaphCare Inc.*, 311 F.R.D. 461, 464 (S.D. Ohio 2015) ("Under Rule 37 and the corresponding provision of the Southern District of Ohio's Local Rules, counsel have an obligation to attempt in good faith to resolve all discovery disputes extrajudicially (i.e., without Court intervention) before filing motions to compel discovery." (citing Fed. R. Civ. P. 37(a)(1); S.D. Ohio Civ. R. 37.1)); *see Benavidez v. Sandia Nat'l Labs.*, 319 F.R.D. 696, 723 (D.N.M. 2017) ("Such a good-faith effort might be established by telephonic conference, contemporaneous email communication, or the now-rare personal meeting amongst parties. Whether the parties engaged in a good-faith conference will involve a case-by-case consideration of the facts, and that consideration might differ from docket to docket . . . . In the case of a violation, the Court may then summarily deny a motion to compel in the event the Court concludes that the movant failed to confer with opposing counsel in good faith.").

Moreover, the basis for Scherer's motion lacks support. He suggests that, without the requested documents, he and Trustee Holmes "will be unable to appropriately respond within fourteen days to any purchase agreement filed with the court due to lack of information necessary to evaluate and protect the equity of the transaction." (ECF No. 212 at 2). He further suggests that the requested information may help him provide "a separate and more lucrative solution" to the Government's attempts to recover Scherer's unpaid tax liabilities. (*Id.* at 3). The latter is irrelevant; the former is an inaccurate interpretation of this Court's previous Order (ECF No. 170), which set out the procedure for potential objections to a motion for approval of a purchase

agreement in this case.[9]  An objection by Scherer would, presumably, entail a disagreement about the purchase price, which does not require Scherer to have advance possession of copies of the receiver bond, confidentiality agreement, deposit accounts, appraisal, or purchaser affirmation. *See supra* Part III.A.1.

Accordingly, Scherer's Motion to Compel (ECF No. 212) is **DENIED AS MOOT** with respect to his request for transcripts of his 1990–92 tax liabilities.  The motion is **DENIED** as too all other requests.

### D.      Motion to Incur Additional Expenses

Finally, this Court turns to the Government's Motion to Authorize Receiver to Incur Additional Expenses (ECF No. 219).  Following this Court's April 5, 2021, Order (ECF No. 170), which appointed a receiver, the Government requested (and this Court granted) permission for the Receiver hire an attorney to assist in drafting and negotiating a purchase agreement and related documents.  (ECF No. 184).  At the time, this Court authorized the Receiver to incur attorney's fees "not to exceed $22,000." (*Id.* at 4).  The Government now asks that the Receiver be allowed to incur additional attorney's fees of up to $35,000 more than the $22,000 previously authorized. (ECF No. 219 at 2).  The Government contends that the further authorization is necessary because additional issues have arisen in the negotiation process for the sale of the properties, which have increased the number of conference calls that the attorney hired by the Receiver (and approved previously by this Court) has had to participate in and the number of drafts that she has had to complete.  (*Id.* at 1–2).  The Government has also proposed that the additional fees be structured such that the costs will be credited against Scherer's tax liabilities, if the sale is successful, or be

---

[9] The deposit amount, for example, will be included in the purchase agreement.  (ECF No. 214 at 5).

paid wholly by the United States, if no sale occurs.  (*Id.* at 2).  In short, no matter the outcome, the additional fees will not cause further detriment to Scherer.

Defendant Summit Community Bank does not oppose this motion.  (*Id.*).  Defendant Scherer, however, does oppose the motion.  (ECF No. 221).  In Scherer's opposition brief, he does not dispute the Government's rationale for requesting the extra allowance or the Receiver's purported need for increased attorney's fees; instead, Scherer once more rehashes old allegations about new evidence that would overturn his 1990–92 tax liabilities, fraud on the court perpetrated by the Government, and the Receiver's non-compliance with court orders.  (*Id.* at 2–5).  Scherer also "renews his request for the court to determine the filings of The U.S. Government . . . are all based on Fraud on the Court."  (*Id.* at 5).  Scherer's contentions here are not well-taken: they are not responsive to the Government's motion, and moreover have been previously assessed and rejected by this Court.

 For good cause shown, this Court **GRANTS** the Government's Motion for Order Authorizing Receiver to Incur Additional Attorney Service Expenses (ECF No. 219).  This order supersedes all previous orders in this case to the extent previous orders are inconsistent with this order.

## IV.    CONCLUSION

For the reasons discussed above, Defendant Scherer's first Motion to Hold in Contempt / for Sanctions (ECF No. 206) is **DENIED AS MOOT**.   His second Motion to Hold in Contempt / for Sanctions (ECF No. 210) is **DENIED**.   Third, his Motion to Compel (ECF No. 212) is **DENIED AS MOOT** with respect to Count 1 and **DENIED** with respect to Counts 2–6.  Plaintiff's Motion to Incur Additional Expenses (ECF No. 219) is **GRANTED**; the Court incorporates the terms issued in its January 25, 2022, Order (ECF No. 184) and further **ORDERS** the following:

1.    The Receiver is authorized to incur additional fees of up to $35,000 more than the $22,000 that previously was authorized by the Court for services of the attorney that he hired with the Court's prior authorization;

2.    The Receiver's attorney may be paid additional fees of up to $35,000 more than the $22,000 that was previously authorized by the Court from the gross proceeds of a sale of the stock and/or assets of Maples and WVHI ahead of the claims of Defendant Summit Community Bank and of Plaintiff United States;

3.    In the event of a sale, the United States shall give Defendant Ronald Scherer credit toward his income tax liability for 1990–92 of the amount up to $35,000 that is charged by the Receiver's attorney above the $22,000 previously authorized by the Court in addition to the amount that the United States receives from the sale; and

4.    In the event that there is no sale, the United States shall pay the amount up to $35,000 that is charged by the Receiver's attorney above the $22,000 previously authorized by the Court.

Finally, Plaintiff's Cross-Motion (ECF No. 213) is **GRANTED**.  Accordingly, Scherer is **ENJOINED** from filing any further motions without submitting a statement from an attorney licensed to practice in this Court or the State of Ohio certifying that there is a good faith basis for the motion Scherer seeks to file.

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: November 14, 2022**

19